## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Herbert A. Igbanugo, Esq., | Case No. 21-CV-105-PJS-HB |
| Plaintiff, | |
| v. | |
| Minnesota Office of Lawyers Professional Responsibility (OLPR); Susan M. HUMISTON, in her official capacity as Director of OLPR; Amy HALLORAN, individually and in her official capacity as Assistant Director to OLPR; Jennifer BOVITZ, individually and in her official capacity as Managing Attorney at OLPR; Lawyers Professional Responsibility Board (LPRB); Jeannette BOERNER, individually and in her professional capacity as Attorney Member at LPRB; Tommy KRAUSE, individually and in his professional capacity as Designated Board Member at LPRB; Wilson Law Group; David Lee WILSON, individually and in his official capacity as Founder and Managing Attorney at Wilson Law Group; Michael GAVIGAN, individually and in his official capacity as Senior Attorney at Wilson Law Group; Cassondre BUTEYN, individually and in her official capacity as Co-Owner and Lead Attorney at Wilson Law Group; Eva RODELIUS, individually and in her official capacity as Senior Attorney at Wilson Law Group; Aust SCHMIECHEN, P.A.; and Brian AUST, individually and in his official capacity as Purported Expert Witness in the *Onofre* Case and as Founding Partner of Aust Schmiechen, P.A. | **DEFENDANTS AUST SCHMIECHEN, P.A. AND BRIAN AUST'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION FOR SANCTIONS** |
| Defendants. | |

## **<u>INTRODUCTION</u>**

Defendants Aust Schmiechen, P.A. and Brian Aust (the "Aust Defendants") move the Court for dismissal of Plaintiff Igbanugo's Complaint (ECF No. 6) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and for sanctions because the operative pleading violates Fed. R. Civ. P. 11(b).[1] The Complaint fails to state a claim for relief and is presented for an improper purpose—namely, to relitigate a jury's decision finding Igbanugo liable for legal malpractice and to challenge the propriety of disciplinary investigations conducted by the Minnesota Office of Lawyers Professional Responsibility ("OLPR").

None of these issues, however, are attributable to the Aust Defendants. Brian Aust provided expert testimony against Igbanugo during the malpractice trial. Igbanugo attempted to rebut that testimony on cross-examination and with his own experts. It is improper for Igbanugo to relitigate that matter here.

Igbanugo's Complaint against the Aust Defendants is merely an effort to harass them because he is upset with the outcome of the malpractice case and with OLPR's disciplinary investigations. The Aust Defendants should not be saddled with the costs of defense to defend this frivolous action where no cognizable legal claim against them exists. It is appropriate here for the Court to dismiss Igbanugo's Complaint, with prejudice and without leave to amend, and to sanction Igbanugo and his firm to deter future bad faith litigation.

---

[1] At the Court's direction, the Aust Defendants incorporate their arguments related to their Motion to Dismiss and their Motion for Sanctions into this single memorandum of law.

## FACTUAL ALLEGATIONS

The Aust Defendants generally deny the allegations set forth in the Complaint. However, and for the purposes of their Motion to Dismiss, the following allegations from the Complaint are presumed true:

1.    Brian Aust is an immigration attorney and partner at the law firm of Aust Schmiechen, P.A. He was hired as an expert witness by Wilson Law Group and on behalf of a plaintiff in a legal malpractice case against Igbanugo in state district court, *Onofre Cedillo v. Igbanugo*, Minn. 4th Dist. 27-CV-16-7603 (the "*Onofre*" matter). (*See, e.g.*, Compl. ¶¶ 2, 5, 128, 208–12.) The *Onofre* matter was the first time that Brian Aust served as an expert witness related to an immigration law matter. (*See id.* ¶ 128.)

2.    Brian Aust provided an expert report and testimony related to Igbanugo's representation of three former clients, Olimpia Onofre Cedillo, Maria Delgado, and Alejandra Catano-Galvan. (*Id.* ¶¶ 208–11.)

3.    As to Onofre, Aust concluded that Igbanugo's legal advice and representation provided no tangible benefit to the client and left Onofre in a worse off position. (*Id.* ¶ 208.) As to Delgado, Aust concluded that Igbanugo's legal advice and representation left Delgado in a worse off position and constituted neglect from the applicable standard of care. (*Id.* ¶ 209.) As to Catano-Galvan, Aust concluded that Igbanugo's legal advice and representation provided no tangible benefit to, and harmed, the client. (*Id.* ¶ 210.)

4.    Igbanugo disagreed with, and continues to disagree with, Aust's expert testimony from the *Onofre* matter. (*See, e.g.*, Compl. ¶¶ 128, 208–12.) However, Igbanugo had the opportunity to cross-examine Aust about his expert testimony during trial. (*See id.* ¶¶ 208, 212.) Igbanugo also presented his own experts, Dyan Williams and R. Leo Pritschet, to rebut Aust's testimony. (*See id.* ¶ 128.) A jury found Igbanugo liable for legal malpractice and, following post-trial motion practice, Igbanugo appealed. The Minnesota Court of Appeals affirmed the trial court's decision in all respects. (*Id.* ¶ 153.)

5.    Igbanugo filed an ethics complaint with OLPR against Aust related to his expert testimony in the *Onofre* case, which OLPR summarily dismissed without initiating an investigation. (*Id.* ¶¶ 218–19.)

6.    Igbanugo asserts here that Aust was not qualified to provide expert testimony in the *Onofre* case (Compl. ¶¶ 3, 5, 128) and that Aust either lied in his expert report or during his trial testimony in an effort to confederate with the Wilson Law Group Defendants and maintain what Igbanugo characterizes as a "sham" lawsuit against him. (*See id.* ¶¶ 208–12.)

7.    Igbanugo asserts in Count 10 of the Complaint that Aust is liable for "vexatious litigation, unbridled violation of ethics rules, and abuse of legal/court process." (*See id.* ¶¶ 358–61.) However, there are no factual allegations in Count 10 of the Complaint that even identify Aust or what he purportedly did that could constitute vexatious litigation, ethics violations, or an abuse of process.

8.    There are no allegations in the Complaint, nor is there any evidence, of OLPR finding that Aust or his firm violated any of the Minnesota Rules of Professional Conduct. (*See, e.g.* Compl. Ex. 75, ECF No. 1-77.)

9.    There are no allegations in the Complaint, nor is there any evidence, of the Aust Defendants engaging in any litigation against Igbanugo. There are no allegations that the Aust Defendants separately and improperly utilized a court process or judicial proceeding to the detriment of Igbanugo. Nor are there any allegations or exhibits that the Aust Defendants filed an ethics complaint against Igbanugo.

10.    Igbanugo does allege that "Mr. Wilson et. al. filed an ethics complaint" against him in June 2018 and cites to Exhibit 58 attached to his Complaint; however, Exhibit 58 indicates that the complaint came from Wilson Law Group and was signed by Mr. Gavigan. There are no other allegations or exhibits that support Igbanugo's overgeneralizing allegations against the Aust Defendants.

11.    The Complaint does not contain any allegations or state any claims for relief against the Aust Schmiechen law firm. The firm is only named as a defendant in the caption and nothing in the body of the Complaint refers to the firm. The only nexus between the separate legal entity that is Aust Schmiechen, P.A. and the present action appears to be the fact that Brian Aust is a part owner of the firm.

## FACTS OUTSIDE THE PLEADINGS BUT RELATED TO THE AUST DEFENDANTS' MOTION FOR SANCTIONS

The following facts fall outside the pleadings for the purposes of the Aust Defendants' Motion to Dismiss; however, they are pertinent to their Motion for Sanctions and, consistent with the Court's instruction to brief both arguments, are provided below for that purpose:

1.      On February 5, 2021, counsel for the Aust Defendants contacted Igbanugo by telephone. Igbanugo took the call on speaker phone with his partner, Jason Nielson, present in the room for the duration of the call. Counsel for the Aust Defendants asked Igbanugo to explain the basis for naming the Aust Defendants in this action and requested dismissal. Igbanugo rejected that request and further indicated to counsel that he was making it his mission in life, or his life's work, to pursue Defendants David Wilson, the Wilson Law Group, and Brian Aust for their roles in the *Onofre* matter. Counsel for the Aust Defendants requested an extension to respond to the Complaint and Igbanugo initially denied that request during the call. However, shortly after the call ended, Igbanugo left a voicemail for counsel, apologizing for "blowing off steam" and agreeing to the requested extension. The parties memorialized the extension by stipulation (ECF Nos. 12–13.). (*See* Declaration of Aaron D. Sampsel ("Sampsel Decl.") ¶¶ 3–4.)

2.      On February 24, 2021, the Aust Defendants served on Igbanugo a Motion for Sanctions and Safe Harbor notice as required by Fed. R. Civ. P. 11(c)(2). (*See* Sampsel Decl. ¶ 5, Ex. A.)

3.    By email on March 5, 2021, Igbanugo provided a written response, dated March 4, 2021, to the Aust Defendants' Motion for Sanctions and Safe Harbor notice. Igbanugo rejected the Aust Defendants' demand and reiterated his belief that the Complaint, with respect to the Aust Defendants, was grounded in law and in fact. (*See Id*. ¶ 6, Ex. B.)

4.    Igbanugo's March 5, 2021 response also purports to be a Safe Harbor notice to the Aust Defendants of Igbanugo's intent to seek sanctions against the Aust Defendants.

The Aust Defendants have incurred, and will continue to incur, significant fees and costs to defend against Igbanugo's frivolous complaint and request a sanction sufficient to deter Igbanugo and his firm from further bad faith litigation.

## ARGUMENT

### A.    Standard for Rule 12(b)(6) Motion to Dismiss.

Igbanugo's Complaint against the Aust Defendants fails to articulate any cognizable claim for relief. To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must allege sufficient facts that state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether a claim is sufficient, this Court accepts as true all of the factual allegations and draws reasonable inferences in favor of the plaintiff. *Paisley Park Enterprises, Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 (D. Minn. 2019) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). While the

factual allegations need not be detailed, they must demonstrate a "right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Merely reciting the elements of a cause of action is insufficient. *Id.* at 555. Similarly, the court must disregard legal conclusions couched as facts. *Id.* With respect to the Aust Defendants, the Complaint does little more than take issue with Brian Aust's credibility as an expert witness, which is not actionable under state or federal law.

### 1.    The Complaint Fails to State Any Claim Against Aust Schmiechen, P.A.

There are absolutely no allegations within the Complaint that are sufficient to establish any kind of liability of the Aust Schmiechen law firm. Despite naming the firm as a defendant in the caption of the Complaint, Igbanugo has failed to allege any facts—or even name Aust Schmiechen, P.A. as a defendant to any specific count in the Complaint—that could be construed as a cognizable claim against the firm. To be sure, searching for the "Aust Schmiechen" name within the complaint leads to only two results—in the caption individually as "Aust Schmiechen, P.A." and in Brian Aust's capacity "as Founding Partner of Aust Schmiechen, P.A." (Compl. p. 2.) Even if the Court draws reasonable inferences in favor of the plaintiff under *Iqbal* and *Twombly*, there are no allegations in the Complaint that create a reasonable inference that the Aust Schmiechen firm is liable to Igbanugo.

Nor are there any allegations in the Complaint that Igbanugo could rely on to prop up an ill-fated effort to raise claims against the firm based on an alter-ego

theory of liability, even if allowed the opportunity to amend, which he should not be allowed to do. In order to hold the corporate entity liable for the acts of an officer, Minnesota courts apply a two-prong test. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979). The first prong looks at whether the entity functioned as a mere instrumentality of the shareholder. *Id.* The second prong looks at whether an injustice or fundamental unfairness exists to warrant piercing. *Id.* Here, there are no allegations in the Complaint that the Aust Schmiechen firm is under-capitalized, that it fails to observe corporate formalities, that it is insolvent, or that it is acting merely as a façade for Aust's individual dealings. *See id.* Similarly, there are no allegations from which this Court could conclude that reverse piercing the corporate veil is necessary to avoid an injustice. Instead, Igbanugo relies only on the argument that the firm *should be* liable for purported ethics violations committed by Aust. (*See* Sampsel Decl. Ex. B at 3.) But Aust has not been found to have violated any ethics rules. (*See* Compl. Ex. 75, ECF No. 1-77.)

Because the Complaint is completely devoid of any facts with respect to the Aust Schmiechen firm, the Court can and should dismiss the Complaint against the firm in its entirety, with prejudice, and without leave to amend.

### 2.    Aust's Expert Testimony is Privileged and Immune from Liability.

The crux of Igbanugo's complaint against Brian Aust relates to the expert opinion offered in the *Onofre* case; however, under Minnesota law, a witness cannot be subject to liability for testimony given as part of a judicial proceeding.

Statements, even if defamatory, may be protected by absolute privilege if the statement is made by an attorney or witness in a judicial proceeding and the statement at issue is relevant to the subject matter of that litigation. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007) (citing *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954)). Under the doctrine of absolute privilege, the speaker is completely shielded from liability arising from his statements. *Id.* "In the context of judicial proceedings, absolute privilege encourages frank testimony by witnesses by enabling them to testify without fear of civil liability for their statements. *Id.* (citing *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418; Restatement (Second) of Torts § 588, cmt. A (1977)).

Despite absolute privilege—and Igbanugo's feigned proclamation that this lawsuit is not an attempt to relitigate the *Onofre* case—his allegations involving the Aust Defendants relate *only* to Brian Aust's role as an expert witness in that case. To be sure, he identifies Aust in the caption as a defendant "in his official capacity as Purported Expert Witness in the *Onofre* Case...." Moreover, there are two sections of Igbanugo's Complaint devoted entirely to Brian Aust's expert reports and testimony, and Igbanugo's dissatisfaction with Aust's expert opinion. (*See* Compl. ¶¶ 208–14.) Specifically, Igbanugo claims that Aust lied in his expert reports:

> At trial, Mr. Aust testified that Plaintiff's conduct complied with four relevant standards of care. Specifically, contradicting the opinion from his expert report, Mr. Aust testified that there is not unanimity in the immigration lawyer's community as to whether it is a breach of the standard of care for an immigration attorney to enter into a

contract for a "stand-alone I-130." He also testified that the large and bold disclaimer language in Plaintiff's contracts (regarding not guaranteeing favorable results and timing of completion) complied with the applicable standard of care for lawyers practicing immigration law.

Brian Aust simply lied in his expert report to permit this fraudulent case to go forward in the first instance, but capitulated under pressure of cross examination to give testimony that contradicts his report and was somewhat more consistent with the contents of the real expert reports of R. Leo Pritschet, Esq. and Dyan Williams, Esq.

Mr. Wilson and his dishonest associates tossed an "unholy hail Mary" hoping the jury of simple folks would "buy it", and they did so unfortunately because of the fraud perpetrated on the court and jury by Mr. Wilson el. al.

(*Id.* ¶¶ 211–13.) There are no other allegations in Igbanugo's 109-page Complaint, or facts from the thousands of pages comprising his exhibits to the Complaint, which articulate any other basis for bringing this action against the Aust Defendants. Therefore, and with respect to the Aust Defendants, this action relates specifically to Aust's role as an expert witness and the absolute privilege doctrine applies. *Mahoney*, 729 N.W.2d at 306 (citing *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418; Restatement (Second) of Torts § 588, cmt. A (1977)).

Aust's expert testimony, including his expert reports, are absolutely privileged and—as a matter of law—liability cannot attach. Applied here, (1) Aust is an attorney who happened to serve as an expert witness, (2) in a judicial proceeding, and (3) the opinion testimony he offered was clearly relevant to the subject matter of the *Onofre* case. Igbanugo's Complaint demonstrates each of these elements. (*See* Compl. ¶¶ 2, 5, 128, 208–12.) The fact that Igbanugo might

not like, or even disagrees with, Aust's expert testimony does not diminish the relevancy of that testimony: Igbanugo was being sued for legal malpractice and it is incumbent upon the plaintiff in a malpractice case to retain an expert to opine on whether the defendant attorney deviated from the applicable standard of care. *See, e.g.*, Minn. Stat. § 544.42. Aust was that expert in *Onofre* and his expert report and subsequent trial testimony were patently relevant to that case.

To the extent that Igbanugo disagreed with Aust's expert testimony, his remedy was to cross-examine him at trial and present competing expert testimony for the jury to consider—which he did. To the extent Igbanugo believes Aust's expert testimony contributed to the jury finding Igbanugo liable for malpractice, Igbanugo's remedy was to challenge the jury's findings through post-trial motion practice and, subsequently, to appeal. He did both of those and the Court of Appeals ultimately affirmed. *See Cedillo v. Igbanugo*, No. A18-0860, 2019 WL 2168766, at *1 (Minn. Ct. App. May 20, 2019), *review denied* (Minn. Aug. 20, 2019). Aust's testimony is privileged and not subject to liability. Igbanugo's Complaint therefore fails to state a plausible claim for relief.

### 3.    There Are No Other Allegations in the Complaint that State a Plausible Claim for Relief Against the Aust Defendants.

There are no allegations in Igbanugo's Complaint—or evidence from within his voluminous exhibits—that Aust's expert testimony somehow gives rise to any other cause of action not articulated in the Complaint.[2] It is Igbanugo's obligation

---

[2] Counts 1 – 9 of the Complaint purport to name as defendants the OLPR, LPRB, and their respective personnel. There is no indication from any of the allegations

to provide facts that support his claims, which he has not done. *See Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a). Instead, he relies on a number of his personal opinions and conclusory arguments couched as fact to assert that the Aust Defendants are liable under Count 10 of the Complaint.

Count 10 does not state a plausible claim for relief under any theory. Igbanugo alleges in sweeping fashion only that the Aust Defendants, among others, engaged in vexatious litigation, abused the legal process, and committed "unbridled" ethics violations. (*See generally* Compl. ¶¶ 358–61.) However, "vexatious litigation" is not independently actionable. The Complaint purports to seek relief related to this claim pursuant to 28 U.S.C. § 1927; however, counsel is not aware of any supporting authority in Minnesota or the Eighth Circuit in this regard. In fact, other jurisdictions have concluded that 28 U.S.C. § 1927 does not provide an independent cause of action. *See Wilson v. Bush*, No. 5:04-CV-141-CAR, 2006 WL 692305, at *3 (M.D. Ga. Mar. 15, 2006) (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 914 n.3 (11th Cir. 1982)). As such, Igbanugo has failed to state a plausible claim for relief related to vexatious litigation.

Similarly, "abuse of process" is not a viable cause of action against the Aust Defendants. Abuse of process is predicated on the existence of an ulterior motive and the act of using the process to achieve a result not within the scope of the proceeding. *Hoppe v. Klapperich*, 224 Minn. 224, 231, 28 N.W.2d 780, 786

---

within those counts that they should apply to, or construed against, the Aust Defendants.

(1947). This claim fails because Igbanugo cannot demonstrate on any evidence that the Aust Defendants engaged in any process, with an ulterior motive, to achieve a result not within the scope of the *Onofre* case. At issue here is the expert testimony in the *Onofre* case. It cannot be said that Aust agreed to be an expert witness, with an ulterior motive, and then somehow manipulated the expert witness process to facilitate a result not contemplated in that proceeding. First, there are no allegations in the Complaint that support these elements. Second, even if there was an opportunity for Aust to engage in an abuse of process, Igbanugo had the ability to cross-examine him and present his own expert witnesses in rebuttal. Third, the fact that the *Onofre* case was decided by a jury, then upheld following post-trial motions, and affirmed by the Minnesota Court of Appeals demonstrates that the outcome of that process resoundingly fell within the scope of the proceeding. Igbanugo has failed to state a plausible claim for relief related to abuse of process.

As it relates to allegations of "unbridled" ethics violations, there are no allegations in the Complaint, nor is there any evidence, of OLPR finding that Aust or his firm violated any of the Minnesota Rules of Professional Conduct. This is because Brian Aust has not violated any of the ethics rules with respect to his expert opinion in *Onofre*. (*See* Compl. Ex. 75, ECF No. 1-77.) Even if the Court assumes Igbanugo's generalized allegations that Aust *should be* found to have violated the ethics rules, the Complaint fails for a number of reasons.

This Court does not have jurisdiction to discipline an attorney for alleged misconduct occurring in a state court proceeding. Igbanugo's Complaint asks this Court either to discipline Aust or to instruct OLPR to investigate and discipline Aust related to his expert opinion in *Onofre*. However, the scope of this Court's ability to sanction an attorney for misconduct is limited to attorneys appearing before it. *See Cantu v. Humiston*, Case No. 18-CV-1288-PJS-SER, 2019 WL 470180, at *5 (D. Minn. Jan. 15, 2019). As such, this Court does not have the authority to determine, or even consider, whether the Aust Defendants violated the Minnesota Rules of Professional Conduct. That authority rests with the Minnesota Supreme Court and its grant of power to OLPR. *See In re Petition to Recall Hatch*, 628 N.W.2d 125, 128 (Minn. 2001) (Minnesota Supreme Court has exclusive authority to discipline attorneys in state court proceedings) (citing *In re Daly*, 291 Minn. 488, 490, 189 N.W.2d 176, 179 (1971)). There are no facts in the Complaint that support the conclusion that the Aust Defendants engaged in any conduct that violated the ethics rules for which this Court could sanction them and it is not within the Court's purview to instruct OLPR to investigate the Aust Defendants for any alleged actions occurring in a state court proceeding.

Moreover, a violation of the ethics rules does not give rise to an independent cause of action. Ordinarily, an attorney's violation of an ethics rule does not give her client the ability to bring an independent cause of action related to that violation. *See Mittelstaedt v. Henney*, No. A20-0573, 2021 WL 18858, at *7 n.13 (Minn. Ct. App. Jan. 4, 2021) ("While the violation of a rule of

professional conduct does not itself give rise to a cause of action against the lawyer, an attorney's violation of a rule...may be evidence of breach of the applicable standard of conduct to support a malpractice claim.") (citing *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628 (8th Cir. 2009)). Even if the Complaint plausibly stated that the Aust Defendants were found to have violated an ethics rule, it would not give Igbanugo the ability to seek relief from them for that claimed violation. For these reasons, the Complaint fails to state a claim for relief related to any purported ethics violations.

Finally, while Igbanugo's Complaint makes cursory intimations of fraud, such a claim fails under Fed. R. Civ. P. 9(b). The Complaint makes a number of references to the *Onofre* case as a "sham" lawsuit, to Aust's "false" and "dishonest" expert report, and to the defendants generally engaging in fraudulent activity. However, notably absent from Igbanugo's Complaint is an actual count for fraud against the Aust Defendants. As such, the vague allegations that sound in fraud fail for lack of particularity.

Serving as an expert witness in a civil action does not give rise to an actionable claim. Even if the Court were to set aside the arguments above, Igbanugo's Complaint fails to articulate any theory of relief under state or federal law for this Court to entertain. The Aust Defendants are not aware of any authority that stands for the proposition that an adverse party can bring claims against an expert witness merely for giving expert opinion. The Complaint can and should be dismissed with prejudice and without leave to amend.

**B.    Standard for Rule 11 Motion for Sanctions.**

Igbanugo brought improper and wholly unsupported claims against the Aust Defendants arising out of Aust's role as an expert witness in the *Onofre* matter. As an attorney, even if acting *pro se*, state and federal law both recognize that counsel has an affirmative duty to ensure that any allegations or factual contentions advanced have evidentiary support, and that counsel has diligently inquired into the factual and legal elements of each claim *before* pursuing those claims in court. Fed. R. Civ. P. 11(b); *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393)); *see also* Minn. R. Prof. Conduct. 3.1; *Uselman v. Uselman*, 464 N.W.2d 130, 142–45 (Minn. 1990) (discussing attorney obligation to investigate claims and contentions before bringing claims), *superseded by statute as stated in Powell v. Anderson*, 660 N.W.2d 107 (Minn. 2003). The law firm of a sanctioned attorney is jointly responsible for the violation. Fed. R. Civ. P. 11(c)(1).

Igbanugo had an independent duty to research the legal and factual bases for his claims before asserting them here—he failed to do so and then refused to withdraw his claims after being put on notice of their inherent deficiencies. As such, it is clear that the Complaint serves little more than to harass the Aust Defendants and the claims therein are wholly unsupported by law and fact.

Igbanugo had sufficient time to remedy the improper pleading but failed to do so. The curative period has expired and sanctions are appropriate to deter future bad faith litigation.

### 1. The Complaint Violates Rule 11 Because it is Presented to Harass the Aust Defendants.

First, Igbanugo's Complaint is presented for an improper purpose as vengeance for Aust's expert testimony in *Onofre*. Igbanugo acknowledged during the February 5, 2021 call with counsel for the Aust Defendants that his purpose for naming the Aust Defendants in the Complaint was because he was making it his goal in life to pursue David Wilson, the Wilson Law Group, and Brian Aust for their roles in the *Onofre* case. (Sampsel Decl. ¶¶ 3–4.) Pursuing a vendetta against opposing counsel and an expert witness, by commencing an action against them in federal court that has no basis in law of fact—after a jury, state court judge, and state appellate court affirmed the results of that state court proceeding—constitutes an improper purpose.

Second, Igbanugo's Complaint is presented for an improper purpose because it is not based in fact and has no support in the law because of the doctrine of privilege. The Aust Defendants, in their Safe Harbor notice informed, Igbanugo of the absolute privilege doctrine regarding witness immunity with respect to Aust's expert witness testimony and that, in light of the privilege, Igbanugo's complaint fails to state a claim for relief. (*See* Sampsel Decl. Ex. A.) Igbanugo's response was:

> Mr. Aust's purported expert testimony may be privileged, but not
> when it violates multiple Rules of Ethics. Besides, the Ten
> Commandments, specifically Commandment Number Nin, counsels
> that ***thou shall not be a false witness against thy neighbor***.

(Sampsel Decl. Ex. B at 3–4.) Brian Aust has not violated any ethics rule and

OLPR summarily dismissed Igbanugo's complaint against him without

investigation. (Compl. Ex. 75, ECF No. 1-77.) Igbanugo's recalcitrance to

withdraw the improper pleading after being put on notice of this authority

demonstrates his bad faith intent to harass the Aust Defendants, unnecessarily

delay the resolution of this case, and needlessly increase the cost of litigation for

all parties involved.

Third, the Aust Defendants put Igbanugo on notice that the Complaint was

improper because it attempted to attach liability against the Aust Schmiechen

firm based solely on the fact that Brian Aust is a co-owner of the firm. Igbanugo's

response was:

> [A]bsent exceptional circumstance, a law firm should be held jointly
> responsible for a violation committed from within the firm by a
> founding partner. When I alleged the cause of action against Mr. Aust,
> it goes without saying that I am making the same allegation against
> Aust Schmiechen which is the launching pad from which Mr. Aust
> concocted his deliberately false and unethical purported expert
> testimony that permitted the frivolous *Onofre* litigation to move
> forward in the first place. Compare your client's purported expert
> report and testimony to those of Mr. R. Leo Prischett, Esq. and Ms.
> Dyan Williams, Esq. who are real experts in the U.S. Immigration and
> Nationality laws....
>
> [...]
>
> [P]lease see my response above...The firm is named in the caption,
> and that was Mr. Aust's launching pad for his lies and unethical

purported expert testimony. And his expert report was submitted on the Aust Schmiechen letterhead. Your client should have known better than to display the monumental lack of candor and integrity that he did in the *Onofre* matter.

(Sampsel Decl. Ex. B at 3.) Again, Igbanugo's effort to attach the Aust Schmiechen firm is premised on the theory that Brian Aust violated an ethics rule. However, there is no evidence that Brian Aust violated any ethics rule.

Fourth, Igbanugo's Complaint also violates Rule 11 because it asks this Court to impose sanctions and punitive damages against the Aust Defendants without having a legal or factual basis for demanding such relief. The Aust Defendants explained to Igbanugo the authority in Minnesota and this District that the Court's powers are limited with respect to finding a violation of the ethical rules and imposing a sanction—particularly where the alleged conduct occurred in a state court proceeding or state agency proceeding. Igbanugo's response was:

> I filed a civil rights lawsuit and I have not asked the Federal District Court to impose discipline on Mr. Aust. All I have prayed to the Federal Court for is a declaratory judgment on the bad behavior of Mr. Wilson et. al., which includes your client, as violative of multiple rules of ethics, so that it will inform the OLPR/LPRB to evenhandedly investigate that pretentious gang of mediocre lawyers and personalities. I trust the Federal Court with all its resources to be able to decipher Mr. Wilson et al.'s ***alternative facts*** from the true facts, and to uncover the evil that transpired in the *Onofre* matter.

(Sampsel Decl. Ex. B, at 4.) Igbanugo's response is nonsensical and contradicts his allegations in Count 10 of the Complaint, which is not a civil rights claim. It also contradicts his requested relief in the Prayer for Relief, where he asks this

Court to conclude that the Aust Defendants committed multiple ethics violations that are immediately sanctionable without further investigation (Prayer ¶ 6), to instruct OLPR to investigate the Aust Defendants (*Id.* ¶ 7), sanction the Aust Defendants (*Id.* ¶ 9), and award Igbanugo in excess of $500,000.00 and attorney fees for damages (*Id.* ¶¶ 10–11). There is no basis in law or fact, as discussed above, for the Court to grant Igbanugo the relief that he seeks.

Moreover, Igbanugo's request for monetary damages in excess of $500,000.00 for the purported violations constitutes a punitive penalty and does not find support in the law and nor is it properly before the Court. This is because: (1) there is no independent claim for punitive damages contained with the Complaint with respect to the Aust Defendants: (2) Igbanugo's Complaint cannot be "defensive" as he characterizes it on the one hand and, at the same time, offensively seek a damages award on the other hand; and (3) the Complaint does not meet the stringent requirements of Minn. Stat. § 549.191 to the extent that any of his claims against the Aust Defendants can be construed as a state law claim.

### 2. Igbanugo's Bad Faith, Litigious Conduct Warrants the Imposition of an Appropriate Sanction, Including an Award of Attorney Fees and Costs to Deter Future Misconduct.

Igbanugo will be hard pressed to present legitimate argument and authority that justifies his pursuit of his frivolous allegations and he cannot merely rely on his own conclusory statements or his opinion to give credence to an illegitimate action. The Complaint is representative of Igbanugo's vendetta

toward OLPR, the Wilson Law Group, and the Aust Defendants. And, rather than take responsibility for the errors he committed while representing his former clients, he is using this Court as a sounding board to air his dirty laundry and discontent. Rule 11(c)(4) allows the Court broad discretion to impose a monetary sanction against Igbanugo and his status as a *pro se* party should not have any bearing on the Court's discretion because Igbanugo, though *pro se* here, is an attorney admitted to practice before this Court and is—or should be—aware of his obligations to adhere to the Local Rules and to the Federal Rules of Civil Procedure.

An appropriate sanction to deter future misconduct includes Igbanugo and his firm paying a penalty to the Court, dismissal of the action with prejudice—if not otherwise dismissed by virtue of Rule 12(b)(6), and an order directing Igbanugo and his firm to pay for the Aust Defendants' necessary and reasonable attorney fees and costs incurred for having to defend against this frivolous action. Counsel is prepared to submit via affidavit or declaration the amount and nature of the fees and costs incurred and will provide documentary evidence in support of the same.

Finally, any request by Igbanugo to impose Rule 11 sanctions against the Aust Defendants at this stage is improper. First, to the extent that the Complaint asks the Court to impose Rule 11 sanctions against the Aust Defendants, such a request is not properly before the Court in an initiating pleading and fails as a matter of law. A party cannot preemptively put another on notice of the

possibility of seeking sanctions down the road—the Safe Harbor notice must comply with Fed. R. Civ. P. 11(c)(2), and the prayer for relief contained within the Complaint does not meet that standard. Second, to the extent that Igbanugo's March 5, 2021 letter to counsel was an attempted Safe Harbor notice, it similarly fails by definition of rule—to be effective, Igbanugo most serve a motion and safe harbor notice consistent with Rule 11(c)(2) and articulate what precisely is improper under Rule 11. At the point of responding to the Aust Defendants' Safe Harbor notice, the Aust Defendants had not yet submitted any pleading to the Court that Igbanugo could have identified as violative of Rule 11. As such, any attempt by Igbanugo to use his March 5, 2021 response letter as a Safe Harbor notice within the meaning of Rule 11 is improper.

## CONCLUSION

The Court need not attempt to read between the lines here, as the plain words contained within Igbanugo's 109-page Complaint speak volumes: he is upset that he ultimately lost the *Onofre* malpractice case, he blames—in part—Aust for that loss, and, because he does not have a legitimate claim to assert against Aust, Igbanugo is using this Court as an avenue to exact revenge on Aust and his law firm. The Complaint fails to articulate a plausible claim for relief, and was clearly presented for an improper purpose. With respect to Defendants Brian Aust and Aust Schmiechen, P.A., the Court can and should dismiss the Complaint in its entirety, with prejudice and without leave to amend.

Moreover, the Court should find that the Complaint violates Fed. R. Civ. P. 11(b) and sanction Plaintiff Herbert Igbanugo and his law firm in an amount sufficient to deter future bad faith litigation up to and including an award to the Aust Defendants of their necessary and reasonable attorney fees and costs incurred to defend this frivolous action.

Respectfully,

**CHRISTENSEN LAW OFFICE PLLC**

Dated: March 19, 2021                    /s/ Aaron D. Sampsel
                                         Aaron D. Sampsel (MN #398521)
                                         Scott A. Jurchisin (MN #398241)
                                         800 Washington Ave. N., Suite 704
                                         Minneapolis, MN 55401
                                         Ph: (612) 823-4016
                                         Fax: (612) 823-4777
                                         aaron@clawoffice.com
                                         scott@clawoffice.com
                                         *Attorneys for Defendants*
                                         *Aust Schmiechen, P.A. and Brian Aust*