## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Herbert A. Igbanugo, Esq.,

      Plaintiff,

v.

Minnesota Office of Lawyers Professional
Responsibility (OLPR); Susan
HUMISTON, in her official capacity as
Director of OLPR; Amy HALLORAN,
individually and in her official capacity as
Assistant Director at OLPR; Jennifer
BOVITZ, individually and in her official
capacity as Managing Attorney at OLPR;
Lawyers Professional Responsibility
Board (LPRB); Jeannette BOERNER,
individually and in her professional
capacity as Attorney Member at LPRB;
Tommy KRAUSE, individually and in his
professional capacity as Designated Board
Member at LPRB; Wilson Law Group;
David Lee WILSON, individually and in
his official capacity as Founder and
Managing Attorney at Wilson Law Group;
Michael GAVIGAN, individually and in
his official capacity as Senior Attorney at
Wilson Law Group; Cassondre BUTEYN,
individually and in her official capacity as
Co-Owner and Lead Attorney at Wilson
Law Group; Eva RODELIUS, individually
and in her official capacity as Senior
Attorney at Wilson Law Group; Aust
SCHMIECHEN, P.A.; Brian AUST,
individually and in his official capacity as
Purported Expert Witness in the Onofre
Case and as Founding Partner of Aust
Schmiechen, P.A.,

      Defendants.

Civil Action No.  21-CV-105 [PJS-HB]

**DEFENDANTS, WILSON LAW
GROUP, DAVID WILSON,
MICHAEL GAVIGAN, CASSONDRE
BUTEYN AND EVA RODELIUS'
MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO
DISMISS AND FOR SANCTIONS**

---

## INTRODUCTION

Plaintiff Herbert A. Igbanugo ("Plaintiff") has initiated this lawsuit against numerous defendants, including the Minnesota Office of Lawyers Professional Responsibility ("OLPR"), its Director and staff attorneys; members of the Lawyers Professional Responsibility Board ("LPRB"); attorneys from the Wilson Law Group, including David Wilson, Michael Gavigan, Cassondre Buteyn, and Eva Rodelius (collectively the "Wilson Defendants"); and finally Aust Schmiechen, P.A., and attorney Brian Aust (collectively the "Aust Defendants"). This memorandum is submitted on behalf of the Wilson Defendants.

Plaintiff's 109-page "Verified Complaint for Declaratory and Injunctive Relief" ("Complaint") purports to be styled as a suit to protect Plaintiff from the "unconstitutional, abusive and oppressive conduct" of the OLPR and LPRB. [Doc. No. 6 at ¶ 1.] Plaintiff further alleges that "declaratory and injunctive" relief is required against the OLPR and LPRB for "their outright refusal to investigate and sanction" the Wilson Defendants and the Aust Defendants. [*Id.* at ¶ 2.] In so arguing, Plaintiff appears to ask this Court to interfere with the OLPR and LPRB's ongoing investigation into Plaintiff and to declare those investigations unconstitutional and also to step in and order the OLPR to impose some measure of discipline against the Wilson Defendants (and others) despite the fact it has already investigated and dismissed Plaintiff's repeated complaints against them.

Beyond Plaintiff's constitutional and civil rights claims against the OLPR and LPRB, Plaintiff has brought suit against the Wilson Defendants for having the audacity to represent former clients of Plaintiff in a successful lawsuit against him in Minnesota state

court. In that case, captioned *Onofre Cedillo et al v. Herbert Igbanugo et al,* No. 27-CV-16-7603 ("*Onofre*"), the Wilson Defendants represented former clients of Plaintiff, alleging breach of contract, legal malpractice, and violations of the Minnesota Consumer Fraud Act. A jury of Plaintiff's peers found for the Wilson Defendants' clients at trial, and that decision was affirmed by the Minnesota Court of Appeals. *See Cedillo v. Igbanugo*, A18-0860, 2019 WL 2168766 (Minn. Ct. App. May 20, 2019) *review denied* (Aug. 20, 2019). Despite his statements to the contrary, it appears that Plaintiff effectively seeks to both relitigate the substantive issues already decided by the jury in the *Onofre* litigation, and have this Court sit as some form of super-appellate Court to declare the Minnesota Court of Appeals' affirmance of the *Onofre* verdict incorrect or otherwise invalid. The *Rooker-Feldman* doctrine and collateral estoppel both preclude this federal court from imposing the Plaintiff's requested relief against the Wilson Defendants because Plaintiff's requested relief would necessarily undermine the judgment against him in the *Onofre* litigation.

Beyond these fatal structural defects in Plaintiff's Complaint, Plaintiff's claims against the Wilson Defendants also fail for the independent reason that he has not alleged a single viable cause of action against them. In Count 10 of Plaintiff's Complaint, which is the only Count directed towards the Wilson Defendants, Plaintiff describes his claims as "Vexatious Litigation, Unbridled Violation of Ethics Rules and Abuse of Legal/Court process." [Doc. 6 at 106.] But "Vexatious Litigation" and "Unbridled Violation of Ethics Rules" are not valid causes of actions under Minnesota or Eighth Circuit precedent, and Plaintiff's claim for Abuse of Process fails on the merits because the claims in the

3

underlying *Onofre* litigation were asserted for (and accomplished) the proper purpose of obtaining a recovery on behalf of the Wilson Defendants' clients. As a result, each of Plaintiff's purported causes of actions fail as a matter of law and should be dismissed.

Further, per the Court's direction, the Wilson Defendants have also included in this memorandum the arguments in support of their motion for sanctions under Fed. R. Civ. P. 11. Given that none of Plaintiff's claims against the Wilson Defendants has any legal merit and all of the claims were brought for the improper purpose of harassing the Wilson Defendants and needlessly increasing the cost of litigation, the Wilson Defendants respectfully request that this Court sanction Plaintiff to deter similar conduct in the future.

## FACTUAL BACKGROUND[1]

Plaintiff's sprawling, 109-page Complaint makes many allegations against the OLPR, its employees, the Wilson Defendants, and others. However, much of the Complaint, including its repeated attacks on the character of Mr. Wilson and the other Wilson Defendants, is irrelevant to the narrow legal questions before the Court on this Motion.

---

[1] The facts set forth in this memorandum are drawn from Plaintiff's Complaint and also from publicly filed pleadings and orders in the underlying *Onofre* state court suit, of which the Court can take judicial notice. *See Appliance Recycling Ctrs. of Am., Inc. v. Protiviti, Inc.*, Case No. CV 18-702 (JRT/HB), 2018 WL 3475489, at *2-3 (D. Minn. July 19, 2018). The Wilson Defendants do not admit Plaintiff's factual allegations to be true but will not dispute them, and will accept them, for purposes of this motion to dismiss.

A.    **The Wilson Defendants Represent Plaintiff's Former Clients in the _Onofre_ Litigation.**

On April 11, 2016, Wilson Law Group initiated a lawsuit in the Hennepin County District Court against Plaintiff on behalf of three of Plaintiff's former clients. [Doc. 6, at 35 ¶ 31.] In that lawsuit, Plaintiff's former clients alleged eight causes action against Plaintiff arising from Plaintiff's conduct as their prior legal counsel: (1) Violations under the Uniform Declaratory Judgments Act; (2) legal malpractice; (3) breach of contract; (4) promissory estoppel; (5) unjust enrichment; (6) conversion; (7) violation of the Minnesota Prevention of Fraud Act; and (8) intentional/negligent misrepresentation. [Doc. 6, at 35 ¶ 131.]

The Complaint alleged that Plaintiff made false representations to his former clients, Ms. Cedillo, Ms. Galvan and Ms. Delgado, regarding their eligibility for immigration relief through their US-citizen children, and that his clients relied on that legal advice, causing them to incur legal fees without any basis for the legal relief being requested. [Doc. 1-7, at 2-3.] The Complaint sought declaratory relief and damages for alleged malpractice, breach of contract, promissory estoppel, unjust enrichment, conversion, consumer fraud and intentional/negligent infliction of emotional distress. [_Id._ at 26.]

Plaintiff answered the Complaint, but also filed a Motion to Dismiss and a Motion seeking sanctions against the Wilson Defendants, as counsel to the plaintiffs in the _Onofre_ litigation, under Minn. R. Civ. P. 11. [Doc. 6, at 34 ¶ 129; Doc. 1-57.] In that sanctions Motion, Plaintiff alleged Mr. Wilson "knowingly filed a frivolous action" and intentionally presented "a pleading to the Court for the improper purpose of harassment or

5

embarrassment of Plaintiff's firm and the Plaintiff." [Doc. 6, at 41 ¶ 149.] Hennepin County District Court Judge Mel Dickstein heard Plaintiff's Motion for Sanctions and denied it in its entirety based on Plaintiff's failure to satisfy the standard for sanctions under Minn. R. Civ. P. 11. [Putney Decl., Ex. A.]

The *Onofre* litigation continued, and trial commenced in that action in late October 2017. Michael Gavigan and Eva Rodelius represented the *Onofre* plaintiffs at trial. [Doc. 1-14.] Mr. Gavigan was lead counsel, while Ms. Rodelius' involvement was limited to taking testimony from some trial witnesses. On November 17, 2017, a jury of Plaintiff's peers rendered a verdict finding him liable for breach of contract, consumer fraud and legal malpractice and awarded money damages to all three plaintiffs. [Doc. 1-13, at 1.] On December 19, 2017 Defendant Igbanugo brought a motion for Judgment as a Matter of Law (JMOL) or a new trial, which the state court ultimately denied. *See, e.g., id.*; *Cedillo v. Igbanugo*, A18-0860, 2019 WL 2168766 (Minn. Ct. App. May 20, 2019) *review denied* (Aug. 20, 2019) (denying Plaintiff's appeal of denial of motion for judgment as a matter of law and for a new trial.

Plaintiff appealed the District Court's entry of judgment against him in the *Onofre* matter but on May 20, 2019, the Minnesota Court of Appeals affirmed the District Court's findings, including its denial of Plaintiff's motion for judgment as a matter of law and for a new trial. *Cedillo*, 2019 WL 2168766 at * 1. On August 20, 2019, the Minnesota Supreme Court denied Plaintiff's petition for review.

**B.** **Mr. Gavigan's Report to the OLPR of the *Onofre* Jury Findings and Plaintiff's Retaliatory Ethics Complaints Against the Wilson Defendants.**

On June 18, 2019, Mr. Gavigan of Wilson Law Group filed a Complaint against Plaintiff with the Minnesota Office of Lawyers Professional Responsibility informing that office of the jury's finding of consumer fraud that had been rendered against Plaintiff. [Doc. 1-60.] Mr. Gavigan's report was in furtherance of his obligations under Minn. R. Prof. Conduct 8.3(a), which requires a lawyer to inform the OLPR when the lawyer knows another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question "as to the lawyer's honesty, trustworthiness, or fitness as a lawyer . . . ."

Plaintiff then filed retaliatory ethics complaints with the OLPR against Mr. Gavigan and other Wilson Defendants on June 26, 2018, alleging misconduct during the course of the *Onofre* litigation. [Doc. 1-60 at 105; Doc. 1-61; Doc. 1-62.] He made numerous allegations against Ms. Buteyn and Ms. Rodelius and the OLPR determined that no investigation was warranted and dismissed them immediately. [Docs. 1-62; 1-63.] The OLPR sought information from Mr. Gavigan and Mr. Wilson regarding one point, to which they responded, and then the OLPR determined that no further inquiry was necessary and those complaints were dismissed as well. [Docs. 1-61; 1-62; 1-73; 1-74.] Plaintiff then filed a *second* round of ethics complaints against the Wilson Defendants, all of which were once again dismissed. [Docs. 1-83; 1-85.]   Plaintiff sought multiple reviews of the determinations, all of which were denied. [Docs. 1-65 to 1-67.]

7

Having lost the *Onofre* litigation on the merits at both the trial and appellate court levels, and having his ethics complaints against the Wilson Defendants dismissed, Plaintiff has now initiated this lawsuit in which he makes a series of unsupported and specious allegations against the Wilson Defendants (and many others). Count X of Plaintiff's Complaint, which is the only Count against the Wilson Defendants, alleges a serious of "claims" that are either not cognizable causes of action or that fail as a matter of law. As such, the Wilson Defendants respectfully request that this Court grant their Motion to Dismiss, dismiss all claims against them, and sanction Plaintiff for initiating this meritless litigation in violation of Fed. R. Civ. P. 11.

## ARGUMENT

### I.    MOTION TO DISMISS

Plaintiff's purported claims fail for two independent groups of reasons. The first group, which we will refer to as the "structural" defects in Plaintiff's claims, relate to the fact that Plaintiff has fought (and lost) on these *exact* issues in the prior state court *Onofre* litigation. The second set of defects relates to the fact that Plaintiff's claims against the Wilson Defendants are either non-cognizable causes of action or fail as a matter of law. For these reasons, the Wilson Defendants respectfully request that this Court grant the Wilson Defendants' Motion to Dismiss and dismiss all claims against them with prejudice and on the merits.

### A.    Legal Standard under Fed. R. Civ. P. 12(b)(6).

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted). In considering a Rule 12(b)(6) Motion, the court accepts as true all of the factual allegations in a light most favorable to the nonmoving party. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). A court may dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face" rather than being merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Simply put, the complaint must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 67. Although the allegations in the Complaint must be taken as true, the court should not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).

While a court's analysis of a Motion to Dismiss under Rule 12(b)(6) is generally limited to the four corners of a complaint, a court may consider materials embraced by the complaint as well as materials that are matters of public record. Pleadings and decisions filed in state court cases, including in the *Onofre* lawsuit in Hennepin County and the subsequent appeal to the Minnesota Court of Appeals, are matters of public record that can be considered in connection with this motion. *See Appliance Recycling Ctrs. of Am., Inc. v. Protiviti, Inc.*, Case No. CV 18-702 (JRT/HB), 2018 WL 3475489, at *2-3 (D. Minn. July 19, 2018) (citing *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015), *Levy v. Ohl*, 477 F.3d 988, 991-92 (8th Cir. 2007)). "Thus, it is proper for the Court to consider state-

court decisions at the motion-to-dismiss stage; the Court need not convert the motion into one for summary judgment." *Id.*; *see also Levy*, 477 F.3d at 991 (public records, such as court records, may be considered in deciding Rule 12(b)(6) motion); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Henderson v. Minnesota*, Case No. 19-cv-135, 2019 WL 8109670 (D. Minn. Dec. 30, 2019) (considering public state court records "relevant to this action" in analyzing 12(b)(6) motion to dismiss).

### B.    The *Rooker-Feldman* Doctrine Provides a Basis to Dismiss All of Plaintiff's Purported Claims Arising from the *Onofre* Litigation.

Plaintiff's requested relief in this case asks this Court to sanction the Wilson Defendants for bringing and prosecuting the *Onofre* litigation in the Minnesota State Court, which he felt was frivolous. [Doc. 6, at 108.] In arguing for such sanctions, Plaintiff is necessarily asking this Court to review and declare incorrect the decisions of the District Court and Minnesota Court of Appeals. As a result, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and Count X against the Wilson Defendants should be dismissed.

The *Rooker-Feldman* doctrine stands for the general principle that lower federal courts lack subject matter jurisdiction to review state court decisions. Federal courts do not have jurisdiction over challenges to the final decisions of state courts, even if the decisions are allegedly unconstitutional, because such review is the exclusive jurisdiction of the United States Supreme Court. *See* 28 U.S.C. § 1257; *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983) (stating "[t]he only court with jurisdiction to review decisions of state courts is the United States Supreme Court"). A party is precluded "from

seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (finding that "Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling"). Specifically, this doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005). That is precisely what Plaintiff seeks here.

Plaintiff's Complaint includes the following requests for relief, both of which effectively ask this Court to declare the *Onofre* litigation frivolous and to reject the state court decisions in that case:

> 9.    Issue professional sanctions against David Lee Wilson, Michael Gavigan, Cassondre Buteyn, Eva Rodelius, and Brian Aust because they have engaged in blatant and vexatious multiplication of proceedings in violation of 28 U.S.C. §1927 (citations omitted).

> 10. Issue financial sanctions against David Lee Wilson, Michael Gavigan, Cassondre Buteyn, Eva Rodelius, and Brian Aust pursuant to Rule 11, Fed. R. Civ. P. in an amount ($500,000 – to be established at trial) sufficient to make Plaintiff whole relative to the amount of firm resources he has expended fending off Mr. Wilson's vexatious *Onofre* litigation, frivolous ethics complaints, and in bringing this legal action.

[Doc. 6, at 108.]

In seeking sanctions against the Wilson Defendants for initiating and prosecuting the *Onofre* litigation, Plaintiff is asking this Court to declare (1) the state court action as being without merit; (2) the District Court's denial of Plaintiff's Motion for sanctions against the Wilson Defendants as incorrect; (3) the jury's verdict against Plaintiff as incorrect; (4) the District Court's subsequent entry of judgment against Plaintiff as incorrect; and (5) the Court of Appeals' affirmance of the District Court judgment as incorrect. That is precisely the type of federal court second guessing of state court decisions that the *Rooker-Feldman* doctrine is intended to prevent. And the Eighth Circuit has held as such. In *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990), the Eighth Circuit held that any federal action predicated upon proving a state court was incorrect is "inextricably intertwined" with a state court judgment and barred by *Rooker-Feldman*. There, the Eighth Circuit explained that a

> federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.*

Given the nature of Plaintiff's requested relief and the allegations in his Complaint, his statement that he is not challenging "any of the decisions of the Minnesota State District Court, Court of Appeals, or the Supreme Court in the *Onofre* matter" is disingenuous. [Doc. 6, at 3 n.1.] This action and the *Onofre* litigation are inextricably intertwined because Plaintiff's requested relief here cannot be granted without this Court deciding that the

Minnesota District Court and Court of Appeals were wrong in *Onofre*. As a result, the *Rooker-Feldman* doctrine bars Plaintiff's claims and requested relief against the Wilson Defendants, and Count X of the Complaint should be dismissed in its entirety.

### C.    Collateral Estoppel Bars Any of Plaintiff's Claims Arising from the *Onofre* Litigation.

Collateral estoppel also prevents Plaintiff from relitigating the issues that were actually decided in the underlying *Onofre* litigation. *Heine v. Simon*, 702 N.W.2d 752, 761 (Minn. 2005). There are four elements to establish collateral estoppel under Minnesota law: (1) the issue litigated in the present action was identical to an issue in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066-67 (8th Cir. 1997) (citing *Willems v. Commissioner of Pub. Safety*, 333 N.W.2d 619, 621 (Minn. 1983) (citations omitted); *Duncan v. Clements*, 744 F.2d 48, 51 (8th Cir. 1984). Applying these factors here, collateral estoppel bars Plaintiff's attempt to relitigate in this Court his contention that the *Onofre* matter was frivolous.

Plaintiff is asserting nearly identical claims in this case as those that he raised (and lost) in his Motion for Sanctions against the Wilson Defendants in the underlying *Onofre* case. *See* [Doc 1-52.] In fact, the arguments advanced by Plaintiff in his Motion for Sanctions against the Wilson Defendants mirror many of the arguments he is advancing here:

| Prior State Litigation | Current Federal Complaint |
|---|---|
| "Plaintiff Attorney David Wilson brought this action for an *improper purpose of harassing Defendants*." <br><br> "Defendants… assert that Mr. Wilson's continued misuse of legal remedies to satisfy his neurotic *desire to attack Defendant*." [Doc 1-52, at 7.] | "sole *purpose* of the *Onofre* lawsuit by Mr. Wilson is to further *harass and embarrass* Plaintiff. … True *goal or motivation* in bringing that spurious legal action has always been, and continues to be, *to harass and embarrass Plaintiff*." [Doc. 6, at ¶ 37.] |
| "The Complaint further shows lack of any investigation whatsoever into law and fact." [Doc. 1-52, at 7.] | "On April 11, 2016, Plaintiff's former clients . . . through counsels Mr. Wilson, Mr. Gavigan, and Ms. Rodelius (with Ms. Cassondre Buteyn, wife of David Wilson, complicit) by complaint initiated a frivolous lawsuit in the Minnesota District Court . . . ." [Doc. 6, at ¶ 131.] |
| "Defendants assert that the complaint lacks a reasonable basis in law or fact and has been brought for an improper purpose -- specifically, to continue an alleged vendetta by an attorney in Plaintiff's counsel's office." [Putney Decl., Ex. A.] (Transcript of Hearing, July 7, 2016) | "Despite this, Mr. Wilson, who has a virulent hatred for Plaintiff, used these clients as proxies in his unholy vendetta against Plaintiff." [Doc. 6, at ¶ 100.] |

As evidenced by the citations above, Plaintiff's arguments regarding the lack of merit and "frivolous" nature of the *Onofre* litigation have already been raised and rejected by that court in both its order denying his motion for sanctions and its order entering judgment against Plaintiff in that case. [Putney Decl., Exs. B, C.]. As such, the first and second elements of collateral estoppel have been met. *See Bechtold*, 104 F.3d at 1066-67. Further, Plaintiff was himself a party in the *Onofre* litigation, satisfying the third required element of collateral estoppel. *Id*.

And finally, Plaintiff was provided a full and fair opportunity to put forth these arguments in the *Onofre* litigation at both the District Court and Minnesota Court of

Appeals. In that case, Plaintiff brought a motion for sanctions arguing many of the same points he alleges in his current Complaint.  But Plaintiff lost that motion and then was found liable by a jury of his peers after a trial on the merits of the plaintiffs' claims. The jury found for Plaintiff's former clients on all claims, and Plaintiff challenged those findings on a Motion for Judgment as a Matter of Law. The Court heard Plaintiff's argument on that Motion and denied it, leading to Plaintiff's appeal to the Minnesota Court of Appeals. Once again, Plaintiff was permitted to argue the merits of his case and lost, with the Court of Appeals affirming the judgment against Plaintiff in the entirety. *See Cedillo v. Igbanugo*, A18-0860, 2019 WL 2168766 (Minn. Ct. App. May 20, 2019) *review denied* (Aug. 20, 2019). Plaintiff then sought review by the Minnesota Supreme Court, which denied Plaintiff's request to hear the appeal. *Id.*

There is no legitimate argument that Plaintiff did not have the opportunity to be fully and fairly heard on these issues during the course of the *Onofre* litigation.  *See Gahr v. Trammel*, 796 F.2d 1063, 1070 (8th Cir. 1986) ("A party receives a fair opportunity to present the claims allegedly precluded if the party could have brought the claims in a proceeding that would satisfy the minimal procedural requirements of the due process clause.") As a result, all four elements of collateral estoppel are met and Plaintiff should not be permitted to relitigate the question of whether the *Onofre* litigation was "frivolous" or "without merit", allegations that are at the very heart of his request for declaratory relief from this Court. *See, e.g.,* [Doc. 6, at 108 ¶¶ 9-10.]

**D.    The Judicial Action Privilege Applies to Bar Claims Arising Out of Any Purportedly "Defamatory" Statements Made by the Wilson Defendants in the *Onofre* Litigation.**

Although Plaintiff does not assert a defamation claim against the Wilson Defendants, Plaintiff's Complaint alleges that the Wilson Defendants, and Mr. Wilson in particular, should be held liable for "name calling associated with defamatory courses of action of consumer fraud and deceit" during the underlying *Onofre* litigation. [Doc. 6, ¶ 206; *see also* ¶¶ 140-141, 157, 162.] However, the judicial action privilege prohibits any of the Wilson Defendants from being held liable for statements made during the course of the *Onofre* litigation. Under the judicial action privilege, statements made "in any judicial proceeding [are] absolutely privileged," *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 308–09 (D. Minn. 1986), and "any privilege that applies to the allegedly defamatory statements applies with equal force to any other claims grounded in the same conduct." *Issaenko v. Univ. of Minn.*, 2016 WL 8198306, at *8 (D. Minn. Jan. 25, 2016). This privilege applies to any pre-litigation communications if the statement is related to the dispute at issue in the litigation. *Matthis v. Kennedy,* 67 N.W.2d at 419 ("An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding ... if it has some relation thereto.") (internal quotations omitted).

While the Wilson Defendants dispute that they made any false or defamatory statements during the course of the *Onofre* litigation, even if they did make such statements they cannot be held liable because the statements were made in the course of litigating their clients claims against Plaintiff. *See id.*; *see also Amundson v. Gilyard*, No.

CV052515JNESRN, 2007 WL 9736070, at *7 (D. Minn. Apr. 3, 2007) ("Allegedly defamatory statements made in the course of judicial proceedings by a party or her attorney are absolutely privileged as long as they are related to the subject-matter of the proceedings.") Each of the allegations of defamatory conduct against the Wilson Defendants occurred within the context of the *Onofre* litigation.

At Paragraph 80 of the Complaint, Plaintiff alleges that Mr. Wilson was "engaging in defamatory conduct and disparagement" in the *Onofre* litigation. [Doc. 6, at 23.] At Paragraph 133 of the Complaint, Plaintiff again alleges that Mr. Wilson made "meanspirited defamatory statements", citing the Complaint in the *Onofre* litigation. [*Id.* at 35.] (citing Ex. 5 of the Complaint). At Paragraph 141 of the Complaint, Plaintiff alleges a "defamatory diatribe in the *Onofre* complaint . . . ." [*Id.* at 40.]; *see also* [*id.* at 162.] Each of these allegations of "defamatory" statements by Mr. Wilson or the other Wilson Defendants relates *directly* to statements made either in the Complaint in the *Onofre* matter or during the course of the litigation. As a result, the Wilson Defendants' allegedly defamatory statements are privileged under the judicial action privilege and cannot form the basis for any claim against them.

### E.    The Wilson Defendants Are Immune from Suit on Any Theory Seeking to Impose Civil Liability for Statements Made in Any Ethics Complaint Against Plaintiff or Subsequent Disciplinary Proceeding.

While Count X of the Complaint is not entirely clear as to whether Plaintiff's request for relief arises solely from the *Onofre* litigation or if it also relates to the OLPR Complaints filed by certain Wilson Defendants, what is clear is that none of the Wilson Defendants can be held civilly liable for filing a complaint with the OLPR or for any statements made

during the OLPR investigation process. *See* Rule 21(a), Rules on Lawyers Professional Responsibility ("RLPR").

First, it is worth noting once again that Mr. Gavigan's report to the OLPR following the jury's verdict in *Onofre* was a mandatory report. Rule 8.3 of the Minn. R. Prof. Conduct states that a "lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty . . . *shall* inform the appropriate professional authority." Minn. R. Prof. Conduct 8.3(a) (emphasis added). In addition, Comment 1 to Rule 8.3 notes that "reporting a violation is especially important where the victim is unlikely to discovery the offense." In this case, the report was "especially important" to ensure that future immigration clients of Plaintiff did not suffer the same injury as the plaintiffs in *Onofre*.

And under Rule 21(a) of the RLPR, which are promulgated by the Minnesota Supreme Court and govern the disciplinary process under Minnesota law, a "complaint or charge, or statement relating to a complaint or charge, of a lawyer's alleged unprofessional conduct, to the extent that it is made in proceedings under these Rules . . . is ***absolutely privileged*** and may not serve as a basis for liability in any civil suit . . . ." (emphasis added). To be clear, this protection is not qualified immunity of the type that exists in other states. Rather, the Minnesota rule expressly states that any such complaint or report to the OLPR is absolutely privileged. As a result, any attempt by Plaintiff to premise any form of civil liability or request for relief on Mr. Gavigan's mandatory report to the OLPR, *or any complaint* made by any of the Wilson Defendants to the Minnesota OLPR or any statement

made by a Wilson Defendant during the investigation process, violates Minnesota law and must be dismissed.

Finally, in addition to the barriers noted above, it is worth nothing that Plaintiff's complaint does not even articulate a theory of recovery or any authority for compensating an individual due to a report to the OLPR. For all these reasons, to the extent Plaintiff is seeking relief as a result of any complaint or report to the OLPR regarding his conduct, such claim fails and should be dismissed.

### F. Count X Does Not Assert Any Viable Cause of Action Against the Wilson Defendants, Requiring Its Dismissal.

Count X of Plaintiff's Complaint, which is the sole Count asserted against the Wilson Defendants, asserts claims of "Vexatious Litigation, Unbridled Violation of Ethics Rules and Abuse of Legal/Court Process." [Doc. 6, at 106.] However, none of the claims asserted by Plaintiff in Count X are viable causes of action and therefore must be dismissed as a matter of law.

### 1. Plaintiff's Claim for "Vexatious Litigation" Fails for the Straightforward Reason That "Vexatious Litigation" is Not a Cause of Action.

Plaintiff has asserted a claim for "Vexatious Litigation" against the Wilson Defendants, asking the Court to impose sanctions upon them under 28 U.S.C. §1927. However, 28 U.S.C. § 1927 does not a create an independent cause of action. *Wilson v. Bush*, No. CIV.A. 5:04CV141CAR, 2006 WL 692305, at *3 (M.D. Ga. Mar. 15, 2006), *aff'd*, 196 F. App'x 796 (11th Cir. 2006) (finding that "the vexatious litigation statute, 28 U.S.C. § 1927, does not create an independent cause of action.") Rather, "one

pursues § 1927 relief through an attorney fee petition . . . ." *Id.* Moreover, the Wilson

Defendants have been unable to identify any common law claim for vexatious litigation

under Minnesota or federal precedent. As such, Plaintiff's claim for "Vexatious Litigation"

is not a cognizable cause of action under Minnesota or Federal law and should be

dismissed.

> **2. Plaintiff's Claim for "Unbridled" Ethics Violations Fails Because Ethics Violations do not Form a Basis for Civil Liability and the Minnesota Supreme Court has Sole Jurisdiction to Regulate Attorney Conduct in Minnesota State Courts.**

Plaintiff's request –that this Court declare that the Wilson Defendants' conduct in

*Onofre* and in connection with the state's disciplinary process "violated a plethora of

ethical rules" –effectively asks this Court to act as a disciplinary authority and regulate the

conduct of the Wilson Defendants in matters not related to the federal courts. *See* [Doc. 6,

at 108.] The Wilson Defendants certainly do not dispute that this Court is vested with the

authority to sanction an attorney for conduct that violates the Minnesota Rules of

Professional Conduct where such conduct is related to either matters pending before the

Federal District Court or are related to the attorney's admission to practice in the Federal

District Court. However, Minnesota law is clear that the Minnesota Supreme Court has the

sole authority to regulate the conduct of Minnesota attorneys *in state court proceedings*.

*See In re Proposed Petition to Recall Mike Hatch*, 628 N.W.2d 125, 128 (Minn. 2001)

(emphasis added); *In re: Daly*, 291 Minn. 488, 189 N.W.2d 176 (1971).

Given that the actions about which Plaintiff complains arose in either the *Onofre*

litigation in the state courts, or during the disciplinary process established by the Minnesota

Supreme Court, the Wilson Defendants respectfully request that this Court decline Plaintiff's invitation to serve as a second regulatory authority over attorney conduct in Minnesota by declaring violations of the Minnesota Rules of Professional Conduct for actions taken in state court matters.

Moreover, to the extent Plaintiff is seeking a finding of civil liability on the part of the Wilson Defendants for alleged ethics violations, such a claim fails because violation of an ethical rule does not give rise to an independent cause of action arising out of the alleged violation. *See Mittelstaedt v. Henney*, No. A20-0573, 2021 WL 18858, at \*7 n.13 (Minn. Ct. App. Jan. 4, 2021 ("While the violation of a rule of professional conduct does not itself give rise to a cause of action against the lawyer, an attorney's violation of a rule ... may be evidence of breach of the applicable standard of conduct to support a malpractice claim." (citing *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628 (8th Cir. 2009)). Accordingly, even if there was a viable claim by Plaintiff that one of the Wilson Defendants violated an ethical rule (which there is not given the repeated dismissals by the OLPR of Plaintiff's complaints against them), it would not form the basis of a civil claim against them by Plaintiff. Accordingly, Plaintiff's claim for "unbridled violation of ethics rules" fails for multiple reasons and should be dismissed.

###### 3.  Plaintiff's Abuse of Process Claim Fails Because Plaintiff Has Not Alleged Facts to Demonstrate an Improper Purpose in the Underlying *Onofre* Litigation and He Has No Cognizable Injury.

Plaintiff's final cause of action in Count X asserts a claim for abuse of process. "Abuse of process" is distinguished from malicious prosecution. The latter requires assertion of a claim, while abuse of process can, and often does, arise from misuse of a

subpoena." § 1:2.Authority, 28 Minn. Prac., Elements of an Action § 1:2. Given this distinction, and the fact that no improper subpoena or other service of process has been alleged in the Complaint, it is likely that Plaintiff's claim for "abuse of process" is likely simply a misnamed claim for malicious prosecution, which would fail as a matter of law as explained in Section VI(c) *infra*. Nonetheless, Plaintiff's stated claim for "abuse of process" likewise fails as a matter of law.

To state a claim for abuse of process under Minnesota law, a plaintiff must establish "the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997). "Mere indirect injury to a person's name or reputation is insufficient to constitute abuse of process." *Dunham v. Roer*, 708 N.W.2d 552, 571 (Minn. Ct. App. 2006).

Courts in this District have held that "the mere issuance of a complaint, standing alone, is an insufficient ground on which to base an abuse of process claim." *Surgidev Corp. v. Eye Tech., Inc.*, 625 F. Supp. 800, 806 n. 4 (D.Minn.1986). Merely initiating a lawsuit with bad intentions is not sufficient to establish an improper purpose necessary to satisfy the elements of an abuse of process claim. *Id.* ("The initiation of a lawsuit to restrain defendants from forming a competing corporation and thereby contravening non-compete agreements to which they were parties is not an improper use of the Court's process—it is, in the words of the *Prosser* treatise, 'nothing more than carry[ing] out the process to its authorized conclusion, even though with bad intentions.'") (internal quotations omitted).

Rather, the lawsuit must seek a "collateral advantage" that is outside the scope of the proceedings. The "collateral advantage" must be more than simply forcing the defendant to incur the fees necessary to defend a suit." *Microsoft Corp. v. Ion Techs. Corp.*, No. CIV 05-1935 JNE/SRN, 2006 WL 2085429, at *6 (D. Minn. July 25, 2006).

While Plaintiff's Complaint is less than clear, the facts as pled indicate that it was the Wilson Defendants' initiation of the *Onofre* litigation that he alleges was an abuse of process. *See, e.g.,* [Doc. 6, at 106 ¶ 359.][2] As such, Plaintiff's abuse of process claim fails as a matter of law because the mere initiation of litigation is insufficient to constitute an abuse of process under Minnesota law. *See Surgidev*, 625 F. Supp. at 806; *Microsoft Corp.*, 2006 WL 2085429, at *6; *see also Imholte v. US Bank, Nat'l Ass'n*, No. CV 19-1627 (DWF/DTS), 2020 WL 362790, at *4 (D. Minn. Jan. 22, 2020) (granting Rule 12 Motion to Dismiss on abuse of process claim premised only on filing of complaint).  Plus, in this case the process was used to achieve a proper result fully within the scope of the proceedings initiated, which was a jury verdict awarding monetary damages and a resulting judgment, in favor of the Wilson Defendants' clients.

But beyond that, Plaintiff's claim also fails for the independent reason that he has no cognizable injury. As noted above, under Minnesota law, a "[m]ere indirect injury to a person's name or reputation is insufficient to constitute abuse of process." *Dunham*, 708 N.W.2d at 571. In addition, merely forcing a defendant to incur defense fees is not

---

[2] To the extent Plaintiff alleges that the filing of ethics complaints with the OLPR was the abuse of process that forms the basis of his claim, that claim fails as a matter of law. As discussed in Section IV *supra*, complainants in ethics matters have absolute immunity from civil liability for filing a complaint under Rule 21, RLPR.

sufficient to establish an abuse of process claim. *Microsoft Corp.*, 2006 WL 2085429, at

\*6. Here, Plaintiff's only claimed injuries are lost billable hours from defending the *Onofre*

litigation and damage to Plaintiff's professional reputation. [Doc. 6, at 24 ¶ 80, 106 ¶ 361.]

As a result, Plaintiff lacks a cognizable injury sufficient to establish a claim for abuse of

process and his claim must be dismissed.

### 4.    Any Unpled Claim for Malicious Prosecution Would Fail Under Minnesota Law Because the Wilson Defendants Were Successful in Their Lawsuit Against Plaintiff.

While Plaintiff has not explicitly pled a claim for malicious prosecution in Count X,

Plaintiff's lengthy Complaint appears to at least potentially implicate such a claim against

the Wilson Defendants. As such, and out of an abundance of caution, the Wilson

Defendants will address any unpled claim for malicious prosecution in the hopes of

avoiding any argument that such a claim was pled but not responded to.

To establish a claim for malicious prosecution under Minnesota law, the Plaintiff

must establish: (1) that the lawsuit was brought without probable cause and with no

reasonable ground on which to base a belief that it would ultimately prevail on the merits;

(2) that the suit was instituted and prosecuted with malicious intent; and (3) that the suit

ultimately terminated in the Plaintiff's favor. *McSweeney v. Maryland Cas. Co.*, 754 F.2d

271, 272 (8th Cir. 1985). Here, Plaintiff could not succeed on a claim for malicious

prosecution arising from the *Onofre* litigation because he unquestionably did not prevail in

that lawsuit. *See Cedillo v. Igbanugo*, A18-0860, 2019 WL 2168766 (Minn. Ct. App. May

20, 2019) *review denied* (Aug. 20, 2019). Rather, both the District Court and Court of

Appeals found in favor of the former clients who were asserting claims against Plaintiff,

clearly precluding any subsequent claim by Plaintiff for malicious prosecution under Minnesota law.

## II.    MOTION FOR SANCTIONS

As discussed in detail above, Plaintiff has initiated this case against the Wilson Defendants in a transparent attempt to gain retribution for successfully representing Plaintiff's former clients in a lawsuit against him, and then for making an ethics complaint informing the Minnesota Office of Lawyers Professional Responsibility of the jury's finding that Plaintiff committed consumer fraud, as well as other past wrongs he deems they have committed against him. But none of Plaintiff's "claims" has any merit, and at least two of the "claims" asserted are not even cognizable causes of action under applicable law. [3]

On February 24, 2021, counsel to the Wilson Defendants served Plaintiff with a Rule 11 Motion and attached "safe harbor" notice, setting forth the specific fatal defects in Plaintiff's claims against the Wilson Defendants and requesting voluntary dismissal. [Putney Decl., Ex. D.] On March 4, 2021, Plaintiff responded with a letter that itself purported to place the Wilson Defendants and their counsel on notice that "if you bring such a meritless (Rule 11) motion against me, I will file for sanctions against you, pursuant to the same rule." [*Id.*, Ex. E.]

---

[3] The Wilson Defendants hereby incorporate the Factual Background section included *supra*, along with the limited additional facts set out in the Declaration of Kelly A. Putney submitted in support of this Motion and cited herein.

In his letter, Plaintiff stated that his primary justification for his meritless lawsuit against the Wilson Defendants is seeking relief under "§ 1983" and not seeking "review of the state court judgment." [*Id.* at 3.] Plaintiff continued in the next paragraph, calling his lawsuit a "generally applicable legal challenge to a state statute in Federal Court . . . ." [*Id.*] Of course, while Plaintiff's constitutional arguments and challenges to statutes *may* have some applicability with regard to the OLPR and other defendants associated with the State of Minnesota, they certainly have no applicability to the Wilson Defendants, who are not state actors.

The Wilson Defendants appear to be little more than collateral damage in Plaintiff's war against the OLPR. The claims asserted against the Wilson Defendants in Plaintiff's complaint lack merit, and the arguments he has advanced since (in his March 5, 2021 letter) to support the propriety of his claims do not even apply to non-state actors. Plaintiff's decision to initiate this lawsuit at the outset, as well as his subsequent refusal to dismiss it, violates Rule 11. Therefore, the Wilson Defendants respectfully request that this Court enter an Order in their favor for sanctions against Plaintiff, including an award of the Wilson Defendants' attorneys' fees and costs incurred in defending this action, to deter future bad faith litigation.

## A.    Legal Standard under Fed. R. Civ. P. 11.

Rule 11 of the Federal Rules of Civil Procedure states, in pertinent part:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4).

"Rule 11 makes sanctions mandatory when a violation of the Rule occurs" and requires that the attorney who signed the pleading "conduct[] a reasonable inquiry into the facts and law supporting the pleadings." *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir. 1987). In evaluating a Rule 11 motion, "the court determines whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duty to the court." *See Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006).

Here, sanctions are required under Rule 11 because the complaint allegations are unsupported by law or fact, and any objectively reasonable attorney would not have made these allegations, or refused to dismiss them when it became clear Plaintiff had no viable claim against the Wilson Defendants. Attorneys' fees are properly awarded under Rule 11

where a violation has occurred.  *See* Fed. R. Civ. P. 11(c)(2) ("[T]he prevailing party [is awarded] reasonable expenses, including attorney's fees, incurred for the motion."); Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; . . . an order directing payment to the movant of party or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *see also Clark,* 460 F.3d 1004 (requiring payment of attorney's fees under Rule 11 where violation occurred and proper notice was given).

**B.     Plaintiff's Claims Against the Wilson Defendants Violate Rule 11 Because They Are Not Supported by Fact of Law and are Presented to Harass the Wilson Defendants and to Gain Retribution for the Ethics Claims Filed Against Him.**

As discussed in detail in the argument section *supra* relating to dismissal under Fed. R. Civ. P. 12(b)(6), Plaintiff's claims are supported by neither fact nor law. It is evident that Plaintiff violated his duty to independently research the legal and factual bases for his claims before asserting them. Accordingly, Plaintiff's suit against the Wilson Defendants serves no purpose other than to harass them and seek revenge for what he sees as past wrongs committed against him.  This is evident for multiple reasons.

First, Plaintiff has brought suit against Cassondre Buteyn for the sole basis that she is the wife of David Wilson and against Eva Rodelius for her role as one of the trial attorneys for the *Onofre* plaintiffs. *See* [Putney Decl., Ex. E.] With respect to Ms. Buteyn, she was not involved in the *Onofre* litigation and did not file an ethics complaint against Plaintiff. Nonetheless, Plaintiff has included her as a defendant in this suit falsely claiming she is "a co-owner of Wilson Law Group by virtue of her marriage to Mr. Wilson[]", and

because Plaintiff believes her to be "Mr. Wilson's partner in his decade + old unjustified vendetta against my firm and I." [*Id.* at 3.] In other words, Plaintiff *admits* that Ms. Buteyn is a named defendant in this case only because she is married to David Wilson and Plaintiff wants redress for Mr. Wilson's alleged so-called "vendetta" against him! The fact that Plaintiff admits that he has no facts to support a claim against Ms. Buteyn, yet chose to file a federal lawsuit against her, is crystal clear evidence of the improper intent of this lawsuit. And, his decision to sue Ms. Rodelius is equally alarming. Ms. Rodelius also did not file an ethics complaint against Plaintiff. Rather, her role was limited to taking witness testimony at the *Onofre* trial. And although Plaintiff alleged improper conduct on her part during the trial and argued it as a basis of his Motion for New Trial (which was denied), he knows full well that the court of appeals considered and rejected that same argument. *See Cedillo v. Igbanugo*, A18-0860, 2019 WL 2168766 (Minn. Ct. App. May 20, 2019) *review denied* (Aug. 20, 2019). His continued pursuit of that losing allegation is further evidence of Plaintiff's improper intent.

Second, when confronted with the legal authority supporting the conclusion that Plaintiff's claims against the Wilson Defendants lack merit, Plaintiff refused to dismiss his complaint against the Wilson Defendants and relied largely on his repeated assertion that this case is a civil rights action aimed at addressing either infringement of his constitutional rights or to challenge a state statute. *See* [*id.*] However, this response with respect to the Wilson Defendants is non-sensical as none of the Wilson Defendants are state actors and none of them are proper defendants in a suit alleging infringement of his constitutional rights.

Moreover, nothing in Count 10 of his Complaint even remotely relates to a purported civil rights claim. This is further supported by Plaintiff's Prayer for Relief, which asks this Court to issue $500,000 in sanctions against the Wilson Defendants and direct the OLPR to further investigate the Wilson Defendants while also declaring their alleged conduct to violate ethics rules. [Doc. 6 at 108.][4] Nothing in Plaintiff's Prayer for Relief against the Wilson Defendants relates to the preservation of Plaintiff's civil rights.

In sum, given that the Complaint does not state a single viable claim against the Wilson Defendants, it is difficult to conceive how Plaintiff's 109-page Complaint, which is replete with personal attacks against the Wilson Defendants, could be intended for any purpose *other than* harassment.

### C.   Plaintiff's Conduct Warrants the Imposition of Monetary and Other Sanctions to Deter Him From Continuing His Quest for Revenge Against the Defendants in This Case.

Plaintiff's repeated (but failed) ethics complaints, followed by this subsequent baseless litigation, make clear that Plaintiff intends to continue his quest for revenge unless and until he is properly deterred. Rule 11(c)(4) grants this Court broad discretion to impose a monetary sanction against Plaintiff in order to deter him from engaging in similar conduct in the future. Plaintiff is an attorney, and no doubt fully understands his ethical and legal

---

[4] Of course, any request by Plaintiff for Rule 11 sanctions against the Wilson Defendants at this stage is improper and in violation of Rule 11 itself. First, to the extent Plaintiff's Complaint requests Rule 11 sanctions against the Wilson Defendants that request is improper in that it does not follow the procedure set out in Fed. R. Civ. P. 11(c)(2). Similarly, to the extent Plaintiff's statement in his March 4, 2021 letter to counsel for the Wilson Defendants [Putney Decl., Ex. E.] was an attempted "Safe Harbor Notice" it too fails as it does not comply with the requirement in Rule 11 that Plaintiff serve a Motion and articulate precisely what is improper under Rule 11.

obligation to adhere to the Federal Rules of Civil Procedure. Despite that, Plaintiff has ignored that obligation and filed a baseless lawsuit to punish the Wilson Defendants. For that reason, the Wilson Defendants request that the Court issue an order directing Plaintiff to pay the Wilson Defendants' reasonable attorneys' fees and costs incurred in this case, along with dismissal of Plaintiff's claims. If such relief is granted, counsel to the Wilson Defendants will submit a declaration setting forth the amount and nature of the fees and costs incurred in defending this baseless litigation, along with any other information the

## **CONCLUSION**

Plaintiff must not be allowed to use this Court to try and punish the Wilson Defendants for their successful representation of his former clients against him and the subsequent mandatory report to the OLPR. The Wilson Defendants respectfully request that the Court bring a quick end to this meritless suit against the Wilson Defendants by dismissing Plaintiff's claims against them in their entirety, with prejudice and without leave to amend. Further, in order to deter Plaintiff from future bad-faith litigation, the Wilson Defendants respectfully request that the Court grant their Motion for sanctions under Fed. R. Civ. P. 11 and sanction Plaintiff for initiating (and continuing) this suit brought for the improper purpose of harassing the Wilson Defendants and forcing them to incur legal fees to defend themselves against meritless claims.

**BASSFORD REMELE**
*A Professional Association*

Dated:  March 22, 2021

By:  *s/ Kelly A. Putney*
    Kelly A. Putney (#237577)
    Aram V. Desteian (#396021)
    Khuram M. Siddiqui (#402148)
100 South 5th Street, Suite 1500
Minneapolis, MN  55402-1254
Telephone:  (612) 333-3000
Facsimile:  (612) 333-8829
Email:  kputney@bassford.com
      adesteian@bassford.com
      ksiddiqui@bassford.com

*Attorneys for Defendants Wilson Law Group,*
*David Wilson, Michael Gavigan, Cassondre*
*Buteyn and Eva Rodelius*