UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Herbert A. Igbanugo, Esq.,

Plaintiff,

vs.

Minnesota Office of Lawyers Professional Responsibility (OLPR); Susan HUMISTON, in her official capacity as Director of OLPR; Amy HALLORAN, individually and in her official capacity as Assistant Director at OLPR; Jennifer BOVITZ, individually and in her official capacity as Managing Attorney at OLPR; Lawyers Professional Responsibility Board (LPRB); Jeannette BOERNER, individually and in her professional capacity as Attorney Member at LPRB; Tommy KRAUSE, individually and in his professional capacity as Designated Board Member at LPRB; Wilson Law Group; David Lee WILSON, individually and in his official capacity as Founder and Managing Attorney at Wilson Law Group; Michael GAVIGAN, individually and in his official capacity as Senior Attorney at Wilson Law Group; Cassondre BUTEYN, individually and in her official capacity as Co-Owner and Lead Attorney at Wilson Law Group; Eva RODELIUS, individually and in her official capacity as Senior Attorney at Wilson Law Group; Aust SCHMIECHEN, P.A.; Brian AUST, individually and in his official capacity as Purported Expert Witness in the *Onofre* Case and as Founding Partner of Aust Schmiechen, P.A.

Defendants.

Civil File No. 21-CV-00105 (PJS/HB)

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## INTRODUCTION

In this action, Plaintiff seeks the extraordinary remedy of federal court intervention into a uniquely state process—attorney ethics investigations. Plaintiff's primary request is that the Court halt an ongoing ethics investigation. But federal courts abstain from interfering in and/or enjoining ongoing attorney ethics investigations under *Younger v. Harris*, 401 U.S. 37 (1971), and *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). Second, drawing from what appears to be long-standing personal animus towards one of the Defendants, Plaintiff asks this Court to re-judge a state court proceeding in which a jury concluded Plaintiff committed legal malpractice and fraud. Plaintiff's request is barred by the *Rooker-Feldman* doctrine. Finally, Plaintiff's request that this Court command the Minnesota Office of Lawyers Professional Responsibility to investigate other attorneys is legally baseless, as this Court lacks subject-matter jurisdiction to second-guess the Office of Lawyer's Professional Responsibility's investigation decisions. For these and several other reasons, Plaintiff's frivolous Complaint should be dismissed.

## STATEMENT OF FACTS

In May 2016, three former clients filed an attorney malpractice case against Plaintiff. *Onofre v. Igbanugo*, Case No. 27-CV-16-7603 (Henn. Cnty. filed May 18, 2016).[1] The case alleged malpractice, consumer fraud, and breach of contract arising out of Plaintiff's representation in immigration matters. *Cedillo v. Igbanugo*, No. A18-0860,

---

[1] Plaintiff alleges the state-court lawsuit was frivolous. (Compl. ¶ 131.) That is a conclusory allegation and should not be credited, particularly because Plaintiff lost this lawsuit after a jury trial. *See Hampton Bank v. River City Yachts, Inc.*, 528 N.W.2d 880, 891 (Minn. Ct. App. 1995).

2019 WL 2168766, at *1 (Minn. Ct. App. May 20, 2019), *review denied* (Aug. 20, 2019). Plaintiff's former clients obtained monetary judgments following a jury trial. *Id.* Judgments were entered in January 2018. *Onofre v. Igbanugo*, Case No. 27-CV-16-7603 (Henn. Cnty. filed May 18, 2016). Plaintiff appealed the adverse judgments and the Minnesota Court of Appeals affirmed. *Cedillo*, 2019 WL 2168766, at *1. The Minnesota Supreme Court denied review.[2]

After judgments were entered, on June 19, 2018, Defendant Gavigan,[3] an attorney at Wilson Law Group, filed an ethics complaint against Plaintiff. (Compl. ¶ 215.)[4] Plaintiff alleges the complaint included the allegations in the *Onofre* complaint. (*Id.*) Plaintiff also alleges that in August 2018, he filed his own ethics complaints against Wilson, Buteyn, Gavigan, Rodelius, and Aust, all of whom are named Defendants here. (Compl. ¶ 218.) Plaintiff complained that the state-court lawsuit was frivolous and vexatious. (*See* Compl. Ex. 1A [ECF No. 6-2], at 16.) Plaintiff alleges that regarding Buteyn, Rodelius, and Aust, Defendant Office of Lawyer's Professional Responsibility ("OLPR") Assistant Director Amy Halloran dismissed the ethics complaints without opening an investigation. (Compl. ¶ 219.[5]) With respect to Wilson and Gavigan,

---

[2] Despite multiple tiers of judicial review, Plaintiff characterizes this state court action as an "egregious miscarriage of justice." (Compl. ¶ 78.)

[3] Plaintiff's Complaint alleges the complaint was filed by Wilson, but the exhibit shows it was filed by Gavigan. (*See* Compl. Ex. 58 [ECF No. 6-60].)

[4] Attorneys have a mandatory duty to report ethics violations. Minn. R. Prof'l Conduct 8.3(a) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, *shall* inform the appropriate professional authority." (emphasis added)).

[5] The disposition for Aust was not the same as for Butelyn and Rodelius. However, for purposes of this motion only, State Defendants take all plausible allegations as true.

Plaintiff alleges the OLPR opened investigations and concluded discipline was not warranted. (Compl. ¶¶ 219-220.[6]) Plaintiff appealed the Wilson and Gavigan dispositions. (Compl. ¶ 224.) Defendant Lawyers Professional Responsibility Board Member ("LPRB") Boerner affirmed the Director's dispositions. (Compl. ¶ 225.)[7]

In December 2019, Plaintiff initiated a second ethics complaint against Defendants Wilson and Gavigan. (Compl. ¶ 226.) In addition to repeating previously dismissed allegations, Plaintiff complained about Wilson's 2003 departure from Plaintiff's former law firm. (Compl. Ex. 74 [ECF No. 6-76], at 2.) Defendant OLPR Director Humiston

---

[6] With respect to Wilson and Gavigan, Plaintiff alleges there was no investigation and that OLPR dismissed the investigations. (Compl. ¶ 220.) The exhibits show that there were investigations and OLPR determine no discipline was warranted for either attorney. (Compl. Ex. 72 [ECF No. 6-74] & Ex. 73 [ECF No. 6-75].)

[7] In Minnesota, disciplinary matters concerning lawyers are handled by the OLPR and governed by the Minnesota Rules on Lawyers Professional Responsibility (the "MRLPR"), which are promulgated by the Minnesota Supreme Court. *See* MRLPR 2 (stating that investigations and proceedings regarding attorney discipline "shall be conducted in accordance with these Rules"). Under Rule 8(a), "[a]t any time, with or without a complaint or a District Ethics Committee report, and upon reasonable belief that professional misconduct may have occurred, the Director may make such investigation as the Director deems appropriate as to the conduct of any lawyers or lawyers." Under Rule 8(e), if a complainant is not satisfied with the Director's disposition of a complaint of attorney misconduct, "the complainant may appeal the matter by notifying the Director in writing within fourteen days." MRLPR 8(e). The Director shall then "assign the matter by rotation to a board member, other than an Executive Committee member, appointed by the Chair." MRLPR 8(e). The board member may: (1) approve the Director's disposition; (2) direct that further investigation be undertaken; (3) instruct the Director to issue an admonition, if a district ethics committee recommended discipline; or (4) instruct the Director to issue charges of unprofessional conduct for submission to a Panel of the OLPR, if the matter was investigated. *Id.* The Minnesota Supreme Court typically will not review summary dismissals of a complaint by the OLPR. *See Kennedy v. L.D.*, 430 N.W.2d 833, 838 (Minn. 1988).

determined not to investigate the complaints. (Compl. ¶ 227.)[8] Plaintiff appealed. (Compl. ¶ 228.) Defendant LPRB Member Krause affirmed the Director's disposition. (Compl. ¶ 229.)

On December 31, 2020, OLPR initiated a charge of unprofessional conduct against Plaintiff. (Compl. ¶ 239; Compl. Ex. 91 [ECF 2].) After receipt of probable cause from a panel of the Lawyers Board, on March 15, 2021, OLPR Director Humiston filed a petition for disciplinary action before the Minnesota Supreme Court (sitting with original jurisdiction over attorney discipline proceedings) seeking suspension of Plaintiff. *In re Petition for Disciplinary Action against Herbert Azubuike Igbanugo, a Minnesota Attorney*, Case No. A21-0338 (Minn. filed Mar. 15, 2021). The proceeding is on-going.

Plaintiff filed this action on January 14, 2021, naming fourteen defendants, many of whom were involved in the above-described malpractice and ethics litigation and/or complaints. The Complaint is a staggering 109 pages, plus 98 exhibits. Five named Defendants are employees of the State who work as members of Lawyers Professional Responsibility Board or employees of the Office of Lawyer's Professional Responsibility. These Defendants are the Minnesota Officer of Lawyers Professional Responsibility (OLPR), Susan Humiston, Amy Halloran, Jennifer Bovitz, Lawyers Professional Responsibility Board (LPRB); Jeanette Boerner; and Tommy Krause (jointly, "State Defendants")

---

[8] The Complaint alleges Defendant Halloran dismissed the complaint, but the exhibit indicates it was Defendant Humiston. (Compl. Ex. 74 [ECF No. 6-76].)

## STANDARD OF REVIEW

On a motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleading in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). However, the Court is not bound to accept as true legal conclusions nor mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (citation and quotation marks omitted).

## ARGUMENT

I. **PLAINTIFF'S LAWSUIT IS AN IMPERMISSIBLE ATTEMPT TO INTERFERE WITH STATE ATTORNEY DISCIPLINE PROCEEDINGS. THIS COURT SHOULD ABSTAIN FROM ADJUDICATING ANY CLAIMS UNDER *YOUNGER* AND *MIDDLESEX COUNTY*.**

*Younger* abstention requires a federal court to refrain from deciding a case "in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)*; see also Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 477 n.1 (8th Cir. 1998). The *Younger* doctrine applies when there is a pending state criminal proceeding, civil enforcement proceeding, or civil proceeding that involves certain orders that are uniquely in furtherance of the

state court's ability to perform its judicial function. *Sprint Comm.*, 571 U.S. at 73. The federal court must refrain from exercising jurisdiction where the ongoing state proceedings implicate important state interests and provide an adequate opportunity to raise any federal challenges. *Id.* at 593–94. However, "a federal court should not abstain if there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010) (quoting *Middlesex Cnty.*, 457 U.S. at 435).

In *Middlesex County*, the United States Supreme Court declared that attorney ethics proceedings generally require federal court abstention. That case involved an attorney ethics proceeding and the Supreme Court stated, "[t]he importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play." *Id.* at 435. Generally, federal courts have "no jurisdiction over state attorney discipline proceedings." *Office of Lawyers Prof'l Responsibility v. Clark*, No. CIV. 12-1874 JRT/AJB, 2012 WL 3477035, at *2 (D. Minn. Aug. 15, 2012). Under *Middlesex*, a federal court should refrain from exercising jurisdiction where (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) the state proceeding provides an adequate opportunity to raise any federal challenges. *Plouffe*, 606 F.3d at 892 (citing *Middlesex Cnty.*, 457 U.S. at 432).[9]

---

[9] The Third Circuit has concluded that after *Sprint*, the *Middlesex* factors do not provide the proper standard for *Younger* abstention. *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). However, even after *Sprint*, the Eighth Circuit applies *Middlesex* to evaluate abstention in the attorney discipline context. *See Ashford v. Off. for Couns. for Discipline*, 805 F. App'x 446 (8th Cir. 2020), *cert. denied sub nom. Ashford v. Off. of DSPLN. Couns.*, No. 20-757, 2021 WL 231580 (U.S. Jan. 25, 2021); *Lewis v. Seventh Cir. Ct. - S. Dakota Unified Jud. Sys.*, 793 F. App'x 464, 465 (8th Cir.), (Footnote Continued on Next Page)

The Eighth Circuit routinely affirms dismissals of federal cases when there is an ongoing state ethics proceeding. *See Gillette v. N. Dakota Disciplinary Bd. Counsel*, 610 F.3d 1045, 1049 (8th Cir. 2010) (affirming motion to dismiss where there was an ongoing ethics proceeding); *Plouffe*, 606 F.3d at 893 (same); *Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) (same); *Ashford v. Office for Counsel for Discipline*, 805 F. App'x 446, 447 (per curiam) (8th Cir. 2020) (same).

In *Clark*, OLPR had filed a petition for disciplinary action against Clark. *OLPR v. Clark*, 2012 WL 3477035, at *1. She answered the petition and the Minnesota Supreme Court referred to the petition to a state district court judge. *Id.* Clark filed a federal court action seeking removal of the disciplinary proceeding and asserting "counterclaims" such as violations of the First Amendment, equal protection, due process and the Americans with Disabilities Act. *Id.* The federal district court remanded the removal. As to jurisdiction, the court observed federal court "normally has no jurisdiction over state attorney discipline proceedings." *Id.* at *2. The court concluded all three *Middlesex* factors had been satisfied—there was an ongoing state proceeding; the state "'has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses'"; and, Clark did not meet her burden of proving the state proceedings did not afford her with an adequate opportunity to raise her federal claims. *Id.* (quoting *Middlesex Cnty.*, 457 U.S. at 434).

_____

(Footnote Continued from Previous Page)
*cert. denied*, 141 S. Ct. 629, 208 L. Ed. 2d 233 (2020); *Curd v. City of Searcy, Arkansas*, 739 F. App'x 359 (8th Cir. 2018). Regardless, the Eighth Circuit regularly dismisses cases such as this—specifically, cases that seek federal court intervention in state attorney ethics proceedings.

In *Plouffe*, 606 F.3d at 890, an Arkansas attorney filed a complaint against the Executive Director of the Arkansas Office of Professional Conduct. *Id.* at 892. The complaint requested the district court to enjoin attorney disciplinary proceedings Ligon had initiated against Plouffe. *Id.* Ligon moved to dismiss, arguing the district court should abstain under *Younger*. *Id.* The district court granted the motion and the Eighth Circuit affirmed. *Id.* On appeal, the attorney argued the second and third abstention factors were not satisfied (important state interest and adequate opportunity). *Id.* at 893. The Attorney argued that although a state has an interest in the attorney discipline proceedings, the second factor was not satisfied because federal courts "have an even stronger interest in addressing his constitutional claims." *Id.* at 893 (internal quotation marks omitted). The Eighth Circuit disagreed, observing the federal court does not weigh state and federal court interests. The Court concluded the second factor was satisfied.

As to the third factor, the attorney in *Plouffe* argued the disciplinary proceedings did not provide him an adequate opportunity to raise his constitutional claims because they allow "only limited discovery" and because the rules of civil procedure are not binding on the proceedings. *Id.* The Court disagreed. It observed the attorney "must present his constitutional claims in the attorney disciplinary proceedings 'unless it plainly appears that this course would not afford adequate protection.'" *Id.* (quoting *Middlesex Cnty.*, 457 U.S. at 435). The Court concluded the attorney had not explained how the limited discovery or relaxation of rules prevented him from presenting his constitutional claims, and therefore the attorney had not shown the alleged limitations prevented him from presenting his constitutional arguments. *Id.*

In *Director of Lawyers Professional Responsibility Board of State of Minnesota v. Perl*, 752 F.2d 352 (8th Cir. 1985) (per curiam), an attorney brought an action to delay enforcement of an OLPR rule against him, for a declaration that the rule was unconstitutional, and for a declaration that delay in investigating him had violated his constitutional rights.  The district court denied relief and the attorney appealed.  *Id.*  The Court of Appeals concluded that the district court properly denied federal injunctive relief on abstention grounds.  *Id.*

In *Neal*, 112 F.3d at 351, there had been over fifteen years of state and federal proceedings related to the attorney.  Among other proceedings, in 1990, the attorney pleaded guilty to "five misdemeanor counts of converting property mortgaged or pledged to a farm credit agency and converting public money to personal use and was sentenced to imprisonment and probation."  *Id.* at 353.  The Executive Director of the Arkansas Supreme Court Committee on Professional Conduct concluded the attorney's conduct warranted disbarment.  *Id.*  The only *Middlesex* factor in dispute was the adequate opportunity factor.  Because the attorney did not point to "any state obstacle preventing him from raising his federal claims in the state proceedings," and because the Arkansas Supreme Court had considered constitutional claims presented during attorney disciplinary proceedings, the Eighth Circuit concluded the third factor applied and *Younger* abstention was appropriate.  *Id.*

Just like in the cases discussed above, all three *Middlesex* factors support abstention here.  First, there is no dispute that there is an ongoing ethics proceeding regarding Plaintiff.  (*See* Compl. ¶¶ 239.)  Plaintiff asks this Court to halt that process.  Specifically, Plaintiff requests this Court to "[d]irect[] OLPR/LPRB and Ms. Halloran to

cease and desist from further harassing and oppressing Plaintiff by continuing investigations, predicated on a spurious complaint of Mr. Wilson, that is only supported by lies and fabricated evidence." (Compl. Prayer for Relief at ¶ 8.) Well-settled case law requiring abstention prohibits such relief.

Second, the State of Minnesota has an important interest in maintaining and assuring the professional conduct of its attorneys. *See Off. of Law. Prof'l Resp. v. Clark*, No. CIV. 12-1874 JRT/AJB, 2012 WL 3477035, at *2 (D. Minn. Aug. 15, 2012).

Third, Plaintiff has not pleaded and cannot show he lacks an adequate opportunity to raise his federal claims in the disciplinary proceedings. *In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W.2d 807, 814 (Minn. 2006) (analyzing attorney's constitutional defense to a charge of unprofessional conduct); *see also* Rule 13(a) MRLP ("Within 20 days after service of the petition, the respondent shall file an answer in this Court, with proof of service. The answer may deny or admit any accusations or state any defense, privilege or matter in mitigation.").

**The *Younger* exception to abstention does not apply.**

A court may decline to abstain where there is a showing of "bad faith and harassment." *Younger*, 401 U.S. at 53; *see also Middlesex*, 457 U.S. at 429. The bad-faith exception may occur "where the state court is clearly incompetent to adjudicate the issues by reason of bias." *P.G. v. Ramsey Cnty.*, 141 F. Supp. 2d 1220, 1229 (D. Minn. 2001).

Plaintiff argues OLPR has engaged in bad faith in retaliation for him exercising his right to free speech. (*See* Compl. ¶ 336.) Such allegations are not plausible as required under *Twombly*. The only free speech Plaintiff alleges he engaged in occurred

during a 2007 meeting and 2013 comments to the media. (Compl. ¶ 336.) Plaintiff describes the 2007 meeting as one that he regrets, as it was an unprofessional outburst that occurred during a personally difficult time for him. (Compl. ¶ 270.) Plaintiff alleges he spoke to the media in 2013 regarding ethics discipline, and stated he believed his suspension was racist. (Compl. ¶¶ 275-76.)

Plaintiff, however, has not plausibly alleged any action by OLPR in the at-issue present day discipline proceeding was caused by either situation. Instead, the record is clear as reflected in Plaintiff's 109-page complaint that the underlying ethics investigation and resulting discipline proceeding before the Minnesota Supreme Court is premised on various complaints against Plaintiff received by several of Plaintiff's former clients as well as a complaint stemming from a jury verdict finding Plaintiff engaged in attorney malpractice and fraud. (Compl. Ex. 91 [ECF No. 2], at 2-14 (Catano-Galvan matter); 14-23 (Maria Delgado matter); 23-34 (Onofre Cedillo matter); 34-37 (Delgado & Lopez matter); 37-39 (Nada El Sewehy matter); 39-44 (Nael Amr El Sewehy matter); 44-51 (Gonzalez & Martinez matter); *see also* Compl. Ex. 58 [ECF No. 6-60]).[10]

Plaintiff also argues OLPR is acting in a discriminatory fashion because he is black but OLPR did not bring a charge of unprofessional conduct against Mr. Wilson, who is white. (Compl. ¶ 304.) First, this allegation is not an exception to *Middlesex*. As explained above, even when a plaintiff raises constitutional claims, abstention is appropriate. *Perl*, 752 F.2d at 352. That makes sense because Plaintiff can raise constitutional defenses in the attorney discipline matter itself. *In re Charges of*

---

[10] Catano-Galvan, Maria Delgado, and Onofre Cedillo were plaintiffs in the state-court action.

*Unprofessional Conduct Involving File No. 17139*, 720 N.W.2d at 814 (analyzing attorney's constitutional defense to a charge of unprofessional conduct); *see also* Rule 13(a) MRLP ("Within 20 days after service of the petition, the respondent shall file an answer in this Court, with proof of service. The answer may deny or admit any accusations or state any defense, privilege or matter in mitigation.").

Second, Plaintiff identifies no similarly situated non-black person who is being treated differently. Generally, he argues that it is harassing for the OLPR to investigate and bring a charge of unprofessional conduct against him after a jury found he had committed legal malpractice and fraud. Notably, Plaintiff identifies no similarly situated attorney against whom OLPR did not bring a charge of unprofessional conduct. Simply, it is not harassing or biased in and of itself for OLPR merely to investigate and charge Plaintiff. *See P.G.*, 141 F. Supp. 2d at 1229 ("feel[ing] persecuted by child protection proceeding" is not evidence of such fundamental unfairness to meet the bad-faith exception). Plaintiff and Wilson are not similarly situated because Plaintiff makes no allegation that Wilson was found by a jury to have engaged in attorney malpractice or fraud. *See State v. Cox*, 798 N.W.2d 517, 521 (Minn. 2011) ("[T]he Equal Protection Clause 'does not require the state to treat things that are different in fact or opinion as though they were the same in law.'" (quoting *State v. Behl*, 564 N.W.2d 560, 568 (Minn. 1997)).

Where there has been no showing of bad faith or harassment, the Court will presume none and should abstain. *Gillette*, 610 F.3d at 1049. Because no exception applies, controlling precedent warrants dismissal of this action without consideration of any of the State Defendants' remaining arguments.

II.    **PLAINTIFF'S LAWSUIT IS AN IMPERMISSIBLE REQUEST THAT THIS COURT RE-JUDGE A FINAL STATE-COURT JUDGMENT, WHICH IS BARRED BY *ROOKER-FELDMAN*.**

The *Rooker-Feldman* doctrine provides a separate and independent basis to dismiss this case:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, the judgment in Plaintiff's jury trial is a final state court action subject to *Rooker-Feldman*. Plaintiff is a state-court loser: he was sued in 2016 for attorney malpractice and fraud. *Onofre v. Igbanugo*, Case No. 27-CV-16-7603 (Henn. Cnty. filed May 18, 2016). He lost following a jury trial. *Cedillo v. Igbanugo*, No. A18-0860, 2019 WL 2168766, at *1 (Minn. Ct. App. May 20, 2019), *review denied* (Aug. 20, 2019). Now, although he tries to avoid *Rooker-Feldman* by stating he "does not challenge any decisions of the [state courts] in the *Onofre* matter, (Compl. ¶ 2 n.1), Plaintiff repeatedly asks this Court to re-evaluate the evidence and make a contrary determination. (*See* Compl. ¶ 79.)

For example, Plaintiff spends over fifteen pages of his Complaint discussing the so-called "true" facts and other allegations related to the state-court matter. (*See* Compl. pages 23-30, 35-43.) Plaintiff spends nearly ten pages identifying "exculpatory deposition testimonies" of the plaintiffs in the state-court action. (*See* Compl. pages 43-52.) He also alleges changes to the U.S. immigration laws, in an unveiled attempt to

obtain a declaration from this court that he actually did not commit malpractice or fraud. (*See* Compl. pages 30-35.)

Much of Plaintiff's Complaint is committed to articulating his grievances with the state-court malpractice and fraud case. But this Court cannot reassess credibility or assess whether Plaintiff committed malpractice or fraud without running afoul of *Rooker-Feldman*. Indeed, credibility determinations are clear jury issues that are unreviewable. *See United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010). This case is not unlike *Neal*, 112 F.3d at 351. In that case, the Arkansas Supreme Court had twice reviewed issues in the attorney discipline case—first, reversing a circuit judge's ruling that the disciplinary complaint was untimely and second, ruling that a particular district court judge (whom the attorney preferred but whom had not been assigned to hear the matter) did not have jurisdiction over the attorney discipline matter. *Id.* at 354. The court concluded *Rooker-Feldman* barred the federal court from entertaining attorney's constitutional arguments that required reviewing and reversing state-court decisions related to ethics proceedings, concluding the "federal claims are inextricably intertwined with his state case." *Id.* at 356.

Plaintiff's Complaint should be dismissed under *Rooker-Feldman* to the extent he is seeking a re-litigation of the *Onfre* state court case.

### III. THIS COURT LACKS SUBJECT-MATTER JURISDICTION TO SECOND-GUESS OLPR INVESTIGATION DECISIONS.

To the extent Plaintiff seeks an order re-evaluating OLPR or LPRB decisions with respect to Plaintiff or other attorneys, this Court lacks subject-matter jurisdiction. It is well-settled that the Minnesota Supreme Court has exclusive authority over the regulation

and discipline of attorneys licensed in Minnesota. "The power to make the necessary rules and regulations governing the bar was intended to be vested exclusively in the supreme court, free from the dangers of encroachment either by the legislative or executive branches." *Sharood v. Hatfield*, 210 N.W.2d 275, 280-81 (Minn. 1973) (quoting *Petition for Integration of Bar of Minn.*, 12 N.W.2d 515, 516 (Minn. 1943)); *see also Cantu v. Humiston*, Case No. 18-CV-1288-PJS-SER, 2019 WL 470180, at *5 (D. Minn. Jan. 15, 2019). "The ultimate determination governing admission, supervision, and discipline of attorneys in this state . . . is vested in [the Minnesota Supreme Court]." *In re Daly*, 189 N.W.2d 176, 179 (Minn. 1971). Thus, the Minnesota Supreme Court "has ultimate responsibility for the administration of the lawyers disciplinary system." *See Kennedy v. L.D.*, 430 N.W.2d 833, 836 (Minn. 1988).

In Minnesota, disciplinary matters concerning lawyers are handled by the OLPR and governed by the Minnesota Rules on Lawyers Professional Responsibility (the "MRLPR"), which are promulgated by the Minnesota Supreme Court. *See* MRLPR 2 (stating that investigations and proceedings regarding attorney discipline "shall be conducted in accordance with these Rules"). The MRLPR set forth a specific process for appealing disciplinary decisions of the OLPR. Under Rule 8(e), if a complainant is not satisfied with the Director's disposition of a complaint of attorney misconduct,[11] "the complainant may appeal the matter by notifying the Director in writing within fourteen days." MRLPR 8(e). The Director shall then "assign the matter by rotation to a board

---

[11] The Director's disposition may include a determination that attorney discipline is not warranted, with or without an investigation; an admonition; or stipulated probation of the lawyer. MRLPR 8(d)(1)-(3).

member, other than an Executive Committee member, appointed by the Chair." MRLPR 8(e). The board member may: (1) approve the Director's disposition; (2) direct that further investigation be undertaken; (3) instruct the Director to issue an admonition, if a district ethics committee recommended discipline; or (4) instruct the Director to issue charges of unprofessional conduct for submission to a Panel of the OLPR, if the matter was investigated. *Id.* The Minnesota Supreme Court typically will not review summary dismissals of a complaint by the OLPR. *See Kennedy*, 430 N.W.2d at 838.

Because the Minnesota Supreme Court has exclusive authority over attorney discipline matters, and has authorized the OLPR to investigate and adjudicate matters of attorney discipline, this Court lacks subject-matter jurisdiction to consider Plaintiff's claims against the State Defendants, which directly attack the decisions of the OLPR and LPRB regarding which complaints to investigate, and which complaints to dismiss. Plaintiff in essence seeks a federal court review of the OLPR and LPRB decisions to decline to investigate or determining that discipline is not warranted. This court lacks subject matter jurisdiction regarding such claims. As a result, all claims against State Defendants should be dismissed.

**IV.    CLAIMS AGAINST OLPR/LPRB AND INDIVIDUALS IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE NOT "PERSONS" UNDER SECTION 1983 AND ARE NOT SUBJECT TO SUIT UNDER THE 11TH AMENDMENT.**

Plaintiff's claims against the OLPR/LPRB and the State Defendants acting in their official capacities are improper.[12]   First, state agencies and state officials acting in their

---

[12] Counts 2-7 and 9 are expressly brought under Section 1983 against the State Defendants. Although Count 8 does not cite Section 1983, the references to Plaintiff's
(Footnote Continued on Next Page)

official capacity are not "persons" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). For the same reason, Plaintiff's 1981 claim (Count 1) also fails against the state agencies and state officials acting in their official capacities, because race discrimination claims under 42 U.S.C. § 1981 against state actors may only be brought pursuant to § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding that § 1983 "provides the sole exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor"); *see also Artis v. Francis Howell North Bank Booster Ass'n. Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (same).

Second, any non-Section 1983 claims against state agencies or state officials in their official capacities are barred under the Eleventh Amendment. A state is immune from suit in federal court unless the state has consented to be sued or Congress has abrogated the state's immunity by an express statutory provision. U.S. Const. amend. XI; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Federal courts lack jurisdiction over both federal and state-law claims against unconsenting states. *Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968-69 (8th Cir. 2000). This immunity applies to claims against state agencies, as well as officials sued in their official capacities. *See, e.g., Will*, 491 U.S. at 71 ("[A] suit against a state official in his or

---

(Footnote Continued from Previous Page)
constitutional rights implies those are federal constitutional claims also brought under Section 1983. *See* Compl. ¶¶ 350, 351, 353.

her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a suit against the State itself.").

Minnesota has not waived its Eleventh Amendment immunity from suit in federal court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (recognizing that the State of Minnesota's limited waiver of sovereign immunity from tort actions in state court is not a waiver of Eleventh Amendment immunity from suit in federal court). Accordingly, Plaintiff's official-capacity claims are barred by the Eleventh Amendment.[13]

## V.    PLAINTIFF'S CLAIMS AGAINST THE STATE DEFENDANTS ARE BARRED BY QUASI-JUDICIAL IMMUNITY.

Even if Plaintiff's claims were not jurisdictionally barred, they would still fail as to State Defendants under the longstanding doctrine of quasi-judicial immunity.[14] "'Persons who perform quasi-judicial functions are entitled to absolute immunity.'" *VanHorn v. Oelschlager*, 457 F.3d 844, 847 (8th Cir. 2006) (quoting *Dunham v. Wadley*, 195 F.3d 1007, 1010 (8th Cir. 1999)). Absolute quasi-judicial immunity "is appropriate when an official's functions are similar to those involved in the judicial process, an

---

[13] Eleventh Amendment immunity does not apply to claims for injunctive relief against individual State officers in their official capacities. *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Any request for injunctive relief, however, must be dismissed under the *Younger* and *Rooker-Feldman* abstention doctrines, as described above, and for quasi-judicial immunity, as described below.

[14] Indeed, Minnesota law expressly provides State Defendants with immunity for their actions taken in their official capacities. Minn. R. Lawyers Prof. Responsibility 21(b) ("Board members, other Panel members, District Committee members, the Director, and the Director's staff, and those entering into agreements with the Director's Office to supervise probations, shall be immune from suit for any conduct in the course of their official duties.").

official's actions are likely to result in lawsuits for damages by disappointed parties, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct[.]" *Dunham*, 195 F.3d at 1010 (internal citations omitted).

The authority granted by the Minnesota Supreme Court to the individual State Defendants is "similar to judicial powers." *VanHorn*, 457 F.3d at 848. The individual State Defendants are required to exercise significant discretion in determining how to respond to complaints, which can "result in lawsuits for damages by disappointed parties," as illustrated by Plaintiff's lawsuit in this case. *Id.* Moreover, the regulatory framework, as set forth above, which includes detailed appeal options, is sufficient to protect the constitutional rights of administrative complainants and respondents. *Id.* (describing procedural safeguards to administrative process as supporting grant of quasi-judicial immunity); *see also Savage v. United States*, 322 F. Supp. 33, 38 (D. Minn. 1971) ("It is the policy of the Minnesota courts to hold lesser state officials immune from civil suits when the complaint against them arises out of the performance of official duties which culminate in proceedings of a judicial nature[.]"). Accordingly, the individual State Defendants are entitled to absolute quasi-judicial immunity on Plaintiff's claims.

The purpose underlying absolute judicial immunity similarly applies to the OLPR and LPRB. "Besides protecting the finality of judgments or discouraging inappropriate collateral attacks . . . judicial immunity also protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

20

"The doctrine therefore applies to suits for injunctive relief as well as claims for money damages." *Edlund v. Montgomery*, 355 F. Supp. 2d 987, 990 (D. Minn. 2005).

"[J]udicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, and it "applies even when the judge is accused of acting maliciously and corruptly[.]" *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Allegations of conspiracy are also insufficient. *See Moses v. Parwatikar*, 813 F.2d 891, 892-93 (8th Cir. 1987). Accordingly, because this case clearly pertains to Plaintiff's dissatisfaction with State Defendants' exercise of professional discretion in resolving various attorney complaints, the allegations against State Defendants should be dismissed.[15]

## CONCLUSION

Plaintiff, in an attempt to deflect attention from his own actions, seeks redress in the wrong forum, from a court where well-settled legal precedent bars such relief. While Plaintiff's substantive due process and racial discrimination claims are without merit, he is free to raise those defenses and arguments in the pending proceeding before the Minnesota Supreme Court. Abstention by this court protects long-standing federalism principles and is so well-settled that—in addition to the lack of subject-matter jurisdiction and immunity case law that also bars the relief sought—Plaintiff's claims are legally frivolous. As they are without a legal basis, State Defendants are deeply concerned they are an attempt to intimidate and burden witnesses to disciplinary proceedings, and Board

---

[15] The Complaint also fails to state a claim against any State Defendant. *See, e.g.*, *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (failure to state an equal protection claim because failure to identify similarly situated person who was treated differently). However, because of the dispositive and controlling abstention principles at play as well as the other arguments raised herein, this memorandum does not brief the Complaint's failure to state a claim on all nine counts brought against the State Defendants.

volunteers fulfilling their appeal review obligation under state court rules.    State

Defendants respectfully request this Court grant their motion to dismiss.


Dated:  March 22, 2021                          KEITH ELLISON
                                                Attorney General
                                                State of Minnesota


                                                s/ Janine Kimble
                                                JANINE KIMBLE
                                                Assistant Attorney General
                                                Atty. Reg. No. 0392032

                                                445 Minnesota Street, Suite 1400
                                                St. Paul, Minnesota 55101-2131
                                                (651) 757-1415 (Voice)
                                                (651) 297-7206 (TTY)
                                                janine.kimble@ag.state.mn.us

                                                ATTORNEYS FOR DEFENDANTS
                                                MINNESOTA OFFICE OF LAWYERS
                                                PROFESSIONAL RESPONSIBILITY
                                                (OLPR); SUSAN HUMISTON; AMY
                                                HALLORAN, *in her individual and official
                                                capacity*; JENNIFER BOVITZ, *in her
                                                individual and official capacity*; LAWYERS
                                                PROFESSIONAL RESPONSIBILITY
                                                BOARD (LPRB); JEANETTE BOERNER, *in
                                                her individual and official capacity*; AND
                                                TOMMY KRAUSE, *in his individual and
                                                official capacity*

|#4889442-v1

22