UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

HERBERT A. IGBANUGO,                                  Case No. 21-CV-0105 (PJS/HB)

        Plaintiff,

v.

MINNESOTA OFFICE OF LAWYERS
PROFESSIONAL RESPONSIBILITY [OLPR];
SUSAN HUMISTON, in her official capacity as
Director of OLPR; AMY HALLORAN,
individually and in her official capacity as
Assistant Director at OLPR; JENNIFER BOVITZ,
individually and in her official capacity as
Managing Attorney at OLPR; LAWYERS
PROFESSIONAL RESPONSIBILITY BOARD
[LPRB]; JEANNETTE BOERNER, individually and
in her professional capacity as Attorney Member at          ORDER
LPRB; TOMMY KRAUSE, individually and in his
professional capacity as Designated Board
Member at LPRB; WILSON LAW GROUP; DAVID
LEE WILSON, individually and in his official
capacity as Founder and Managing Attorney at
Wilson Law Group; MICHAEL GAVIGAN,
individually and in his official capacity as Senior
Attorney at Wilson Law Group; CASSONDRE
BUTEYN, individually and in her official capacity
as Co-Owner and Lead Attorney at Wilson Law
Group; EVA RODELIUS, individually and in her
official capacity as Senior Attorney at Wilson Law
Group; AUST SCHMIECHEN, P.A.; BRIAN AUST,
individually and in his official capacity as
Purported Expert Witness in the *Onofre* Case and
as Founding Partner of Aust Schmiechen, P.A.,

        Defendants.

---

Herbert A. Igbanugo, IGBANUGO PARTNERS INT'L LAW FIRM, PLLC, pro se.

Janine W. Kimble, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendants Minnesota Office of Lawyers Professional Responsibility, Susan Humiston, Amy Halloran, Jennifer Bovitz, Lawyers Professional Responsibility Board, Jeannette Boerner, and Tommy Krause.

Kelly A. Putney, Aram V. Desteian, and Khuram M. Siddiqui, BASSFORD REMELE, for defendants Wilson Law Group, David Lee Wilson, Michael Gavigan, Cassondre Buteyn, and Eva Rodelius.

Aaron D. Sampsel and Scott A. Jurchisin, CHRISTENSEN LAW OFFICE PLLC, for defendants Aust Schmiechen, P.A., and Brian Aust.

Plaintiff Herbert Igbanugo is an attorney who is the subject of disciplinary proceedings that are pending before the Minnesota Supreme Court.  Some of the allegations against him in those disciplinary proceedings also formed the basis of a malpractice action that several of Igbanugo's former clients recently won against him.  Defendant Michael Gavigan and other attorneys from defendant Wilson Law Group represented Igbanugo's former clients in that malpractice action, and defendant Brian Aust testified as an expert witness on behalf of those former clients.

Igbanugo brings this action against Minnesota Office of Lawyers Professional Responsibility ("OLPR"), Lawyers Professional Responsibility Board ("LPRB"), and associated government officials (collectively the "state defendants"); David Wilson, his firm Wilson Law Group, and other Wilson lawyers (Gavigan, Cassondre Buteyn

(Wilson's wife), and Eva Rodelius) (collectively the "Wilson defendants"); and Aust and his firm, Aust Schmiechen, P.A. (collectively the "Aust defendants").

This matter is before the Court on defendants' motions to dismiss and the Wilson and Aust defendants' motions for sanctions.  For the reasons that follow, the Court grants the motions to dismiss and grants the motions for sanctions.

## I.  BACKGROUND

In the early 2000s, both Wilson and Buteyn worked for Blackwell Igbanugo, Igbanugo's previous firm.  Compl. ¶¶ 9, 21, 38.  Wilson and Buteyn left the firm sometime in late 2003 or early 2004, but not before Wilson (according to Igbanugo) stole confidential information, used improper methods to influence clients to follow him to his new firm, and diverted client funds to himself.  Compl. ¶¶ 39–42, 46, 48, 71–76 & Ex. 80 at 2.  Since then, Wilson and Igbanugo have been on bad terms, and each of them has submitted ethics complaints against the other to OLPR.[1]  Compl. ¶¶ 56 & Exs. 14, 98.

---

[1]OLPR is responsible for investigating and prosecuting complaints of unprofessional conduct against Minnesota lawyers.  *See* http://lprb.mncourts.gov/AboutUs/Pages/default.aspx (last visited Nov. 8, 2021).  If OLPR concludes that discipline is warranted against a lawyer, the matter goes before a panel of LPRB members (or, alternatively, a referee).  Minn. R. Laws. Pro. Resp. 1(9), 4(e), 9.  If the panel finds probable cause to believe that public discipline is warranted, the panel directs OLPR to file a petition for disciplinary action in the Minnesota Supreme Court.  *Id.* Rule 9(j).  The Minnesota Supreme Court may then appoint a referee to hear evidence and prepare a report.  *Id.* Rule 14(a).

In April 2016, Gavigan (an attorney at Wilson's law firm) brought malpractice and other claims against Igbanugo in state court on behalf of three of Igbanugo's former clients.  Compl. ¶ 131 & Ex. 5.  The parties refer to this as the "*Onofre*" action.  The *Onofre* plaintiffs recovered damages from Igbanugo after a jury found that he had committed malpractice, breached contracts, and violated the Minnesota Consumer Fraud Act.  The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review.  *See Cedillo v. Igbanugo*, No. A18-0860, 2019 WL 2168766 (Minn. Ct. App. May 20, 2019), *rev. denied* (Minn. Aug. 20, 2019).

Meanwhile, in June 2018, around the time that the parties were cross-appealing the *Onofre* judgment, Gavigan submitted an ethics complaint against Igbanugo to OPLR.  In that complaint, Gavigan reported (among other things) that Igbanugo had committed the misconduct that led to the *Onofre* jury's verdicts against him.  Compl. ¶ 215 & Ex. 58.[2]  This is not the first time that Igbanugo has faced professional discipline; prior to the initiation of the *Onofre* lawsuit, Igbanugo had been disciplined on four separate occasions.  *See In re Disciplinary Action against Igbanugo*, 863 N.W.2d 751, 755, 764 (Minn. 2015) (temporarily suspending Igbanugo from the practice of law and noting that he had been disciplined on three prior occasions).

---

[2]Igbanugo alleges that Wilson submitted the complaint, but the copy of the complaint attached to Igbanugo's pleading was signed by Gavigan.  Compl. Ex. 58 at 11.

-4-

OLPR investigated Gavigan's complaint and, on December 31, 2020, submitted charges to an LPRB panel for a probable-cause determination.  Compl. ¶ 239 & Ex. 91. Igabanugo filed this action about two weeks later.  Since this action was filed, the LPRB panel has found probable cause and OLPR has filed a petition for disciplinary action with the Minnesota Supreme Court.  *See In re Disciplinary Action against Igbanugo*, No. A21-0338 (Minn. filed Mar. 15, 2021).  The disciplinary action is currently pending before a referee, whose findings and recommendations are due on or before February 28, 2022.  *Id.* (order filed Oct. 7, 2021).

Shortly after Gavigan submitted the ethics complaint against Igbanugo, Igbanugo submitted ethics complaints against Wilson, Gavigan, Buteyn, Rodelius, and Aust.  Compl. ¶ 218 & Ex. 1A.  The complaints claimed that the *Onofre* action was frivolous and that the Wilson and Aust defendants engaged in various types of misconduct in the course of winning that action.  Compl. ¶¶ 182–83, 189–95, 197–202, 204–14.  OLPR dismissed the complaints againt Buteyn, Rodelius, and Aust without investigation.  Compl. ¶ 219 & Exs. 60–63, 75.  With respect to Wilson and Gavigan, OLPR opened investigations but later determined that there was insufficient evidence that either of them had violated the rules of professional conduct.  Compl. ¶¶ 219–20 & Exs. 72–73.

Igbanugo appealed the dismissal of his complaints against Wilson and Gavigan and, in November 2019, LPRB affirmed.  Compl. ¶¶ 224–25, Exs. 65–66, 80.  Less than a month later, Igbanugo submitted a new complaint against Wilson, Gavigan, and Buteyn.  Compl. ¶ 226 & Ex. 81.  OLPR dismissed the new complaint a few weeks later, and LPRB affirmed that decision on appeal.  Compl. ¶¶ 227–29 & Exs. 71, 74, 83.

## II.  MOTIONS TO DISMISS

### A.  Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.[3]  *Perez v. Does 1–10*, 931 F.3d 641, 646 (8th Cir. 2019).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

---

[3]The state defendants also move to dismiss under Fed. R. Civ. P. 12(b)(1), contending that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).  (The Wilson defendants made a similar argument, but without formally moving to dismiss under Rule 12(b)(1).)  Igbanugo undoubtedly faces significant issue-preclusion problems on account of the *Onofre* action, but he is not asking this Court to reject the *Onofre* judgment, and thus the *Rooker-Feldman* doctrine is not implicated.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

*Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.

### B.  Claims Against the State Defendants

Igbanugo brings numerous constitutional claims against the state defendants, contending (among other things) that the pending disciplinary proceedings are racially discriminatory, violate his right to free speech, reflect selective prosecution, and were brought in violation of his Fourth Amendment rights.  He also alleges what appear to be state-law claims of abuse of process, malicious prosecution, and conspiracy.

At oral argument, Igbanugo clarified that he is not challenging any previous decision or disciplinary action taken against him by the state defendants.  Instead, Igbanugo said that he wants this Court to order the state defendants not to admit any evidence from the *Onofre* case in the disciplinary proceedings against him until this Court first determines whether his civil rights were violated during the course of the *Onofre* litigation.  Igbanugo also said that he wants this Court to order the state defendants to "leave [him] alone" and to initiate disciplinary proceedings against the Wilson and Aust defendants.  Later during oral argument, however, Igbanugo seemed to walk back these requests for injunctive relief, insisting that he is not asking the Court to order the state defendants to do anything.  Instead, Igbanugo said, he simply wants

the Court to make findings as to "civil rights violations," apparently in the hope that he

can introduce these "findings" in the pending disciplinary proceedings.

The state defendants argue that the Court should dismiss these claims against

them under *Younger v. Harris*, 401 U.S. 37 (1971), and *Middlesex County Ethics Committee*

*v. Garden State Bar Association*, 457 U.S. 423 (1982).  The Court agrees.

"The *Younger* abstention doctrine, as it has evolved, provides that federal courts

should abstain from exercising jurisdiction when (1) there is an ongoing state

proceeding, (2) which implicates important state interests, and (3) there is an adequate

opportunity to raise any relevant federal questions in the state proceeding."  *Plouffe v.*

*Ligon*, 606 F.3d 890, 892 (8th Cir. 2010).  The underlying state proceeding must be

judicial in nature, *Middlesex*, 457 U.S. at 432–34, and it must fall within one of the

recognized "exceptional circumstances" in which *Younger* abstention is warranted,

*Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 551–52 (8th Cir. 2018).

*Younger* abstention can be triggered by suits for declaratory as well as injunctive relief.

*See Samuels v. Mackell*, 401 U.S. 66, 72–73 (1971).

There is no dispute that the state disciplinary proceedings pending against

Igbanugo implicate important state interests and fall within an "exceptional

circumstance" that makes *Younger* abstention appropriate.  *See Middlesex*, 457 U.S. at 425

(holding that *Younger* abstention applied due to pendency of state attorney-disciplinary

proceeding); *Gillette v. N.D. Disciplinary Bd. Couns.*, 610 F.3d 1045, 1046 (8th Cir. 2010)

(affirming dismissal under *Younger* and *Middlesex* of a case seeking to enjoin an attorney

disciplinary proceeding); *Plouffe*, 606 F.3d at 892 (same).

Likewise, there is no dispute that attorney-disciplinary proceedings in Minnesota

are judicial in nature.  *See* Minn. R. Laws. Pro. Resp. 12–16 (rules governing conduct of

disciplinary hearings in the Minnesota Supreme Court); *Dir. of Laws. Pro. Resp. Bd. of

State of Minn. v. Perl*, 752 F.2d 352, 352–53 (8th Cir. 1985) (per curiam) (holding that

dismissal of lawyer's challenge to Minnesota disciplinary proceedings was appropriate

under *Younger* and *Middlesex*); *cf. Middlesex*, 457 U.S. at 432–34 (finding New Jersey's

disciplinary proceedings, which resemble Minnesota's, to be judicial in nature).

Finally, Igbanugo has an adequate opportunity to raise his federal claims in the

state proceedings.  Igbanugo has not identified anything that would bar him from

raising federal defenses in the attorney-disciplinary proceedings, which is not

surprising given that the Minnesota Supreme Court routinely addresses federal

defenses in the course of such proceedings.  *See* Minn. R. Laws. Pro. Resp. 13(a) ("The

answer may deny or admit any accusations or state any defense, privilege, or matter in

mitigation."); *In re Disciplinary Action against MacDonald*, 906 N.W.2d 238, 246–47 (Minn.

2018) (addressing attorney's First Amendment defense); *In re Disciplinary Action against

Dvorak*, 554 N.W.2d 399, 404 (Minn. 1996) (considering selective-enforcement argument

in determining appropriate discipline); *see also Plouffe*, 606 F.3d at 894 (rejecting

argument that plaintiff could not present his claims in state court because "we have

previously found that the Arkansas Supreme Court adequately considers constitutional

claims raised during attorney disciplinary proceedings").

Igbanugo contends that the Minnesota Supreme Court will take his claims more

seriously if this Court makes findings that his civil rights were violated in the course of

the *Onofre* action.  But even if Igbanugo's premise were accurate, Igbanugo's desire to

enlist this Court to assist him in prevailing in his state disciplinary proceedings is not a

basis for avoiding *Younger* abstention.

Igbanugo relies mainly on the exception to *Younger* for "bad faith, harassment, or

some other extraordinary circumstance that would make abstention inappropriate."

*Middlesex*, 457 U.S. at 435.  He contends that he is being singled out for discipline

because of his race and ethnicity and that he is a victim of selective prosecution.  In

support of his contentions, Igbanugo points to the fact that OLPR and LPRB have not

taken any disciplinary action against the Wilson and Aust defendants or other attorneys

connected with them.  Igbanugo admits, however, that neither the referee nor the

Minnesota Supreme Court are racially biased, and he can therefore present his federal

claims in the state forum.[4]  *See Gillette*, 610 F.3d at 1049 ("Gillette argues that Edison and

---

[4]After oral argument in this case, the original referee recused and a new referee
(continued...)

the Board acted in bad faith and violated his right to equal protection . . . . The short

answer to the equal protection claim is that it can be raised in the ongoing state court

proceeding.").  Moreover, the investigation and disciplinary proceedings against

Igbanugo were prompted in large part by the fact that a jury found that he had

committed malpractice, breached contracts with clients, and violated the Consumer

Fraud Act.  *Cedillo*, 2019 WL 2168766, at *1.  Under the circumstances, it would be

remarkable if disciplinary proceedings had *not* been initiated against Igbanugo.

Moreover, these circumstances mean that Igbanugo's situation is markedly different

from the situation of the Wilson and Aust defendants, who have not been found by a

jury to have committed malpractice, breached contracts, or violated the Consumer

Fraud Act.

In short, there is no basis for concluding that any state defendant has acted in

bad faith or illegally harassed Igbanugo.  The Court therefore grants the state

defendants' motion to dismiss on the basis of *Younger* and *Middlesex*.[5]

_____

[4](...continued)
was appointed.  *See In re Disciplinary Action against Igbanugo*, No. A21-0338 (Minn.)
(orders filed Sept. 27, 2021, and Oct. 7, 2021).

[5]Had Igbanugo persisted in his request that this Court order the state defendants
to initiate disciplinary proceedings against the Wilson and Aust defendants, Igbanugo's
request would not have been subject to *Younger* abstention.  As discussed below,
however, there is no private cause of action for violations of the Minnesota Rules of
Professional Conduct, and Igbanugo lacks standing to sue for the purpose of instigating
(continued...)

## C. The Wilson and Aust Defendants

Igbanugo's complaint alleges a single count against the Wilson and Aust defendants labeled "Vexatious Litigation, Unbridled Violation of Ethics Rules, and Abuse of Legal/Court Process."  Compl. at 106.  As "vexatious litigation" and "unbridled violation of ethics rules" are not causes of action, the only recognizable claim against these defendants is for abuse of process.  At oral argument, however, Igbanugo clarified that he is not suing these defendants for that tort, but rather is seeking to have this Court discipline them, impose sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, and issue a declaratory judgment that they violated the Minnesota Rules of Professional Conduct in connection with the *Onofre* case.

Igbanugo argues that this Court has the authority to impose discipline on any attorney admitted to practice before it, even for conduct that occurred in state court. That is true, but it is also true that there is no private right of action to seek such

---

[5](...continued)
an official disciplinary proceeding against another lawyer.  Minn. R. Prof. Conduct, Scope ("The fact that a rule is a just basis . . . for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule."); *Wevley v. Off. of Laws. Pro. Resp.*, No. 06-CV-2694 (MJD/AJB), 2007 WL 9735067, at *3 (D. Minn. Jan. 8, 2007) ("To the extent Plaintiff is arguing that the OLPR failed to properly handle an ethics complaint he filed in 2004, . . . Plaintiff has no standing to bring such a claim."); *cf. In re Proposed Petition to Recall Hatch*, 628 N.W.2d 125, 128 (Minn. 2001) ("to allow the recall process to be used as a means of enforcing the Rules of Professional Conduct infringes on the [Minnesota] Supreme Court's exclusive authority to discipline attorneys").

discipline.  *Orsello v. Gaffney*, No. 09-CV-2272 (JNE/SRN), 2009 WL 3164738, at *2 (D.

Minn. Sept. 25, 2009) ("[Local] Rule 83.6 merely prescribes the procedures to be used *by*

*the Court* to discipline attorneys who fail to comply with the Court's rules and

regulations; it does not create any cause of action enforceable by private parties.").

Similarly, there is no private cause of action for violations of the Minnesota Rules

of Professional Conduct.  *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn.

1989) ("A violation of the Rules of Professional Conduct cannot give rise to a private

action against an attorney."); *Kastelyns v. Blomquist*, No. C8-94-2377, 1995 WL 295923, at

*1–2 (Minn. Ct. App. May 16, 1995) (affirming summary judgment against litigant who

tried to sue opposing counsel in a prior case for, among other things, violations of the

rules of professional conduct).

Likewise, as noted above, Igbanugo does not have standing to sue for the

purpose of instigating an official disciplinary proceeding.  As a result, there is nothing

at stake for him in obtaining a declaration that the Wilson and Aust defendants have

violated the ethical rules.  He therefore lacks standing to seek such relief.  *Animal Legal*

*Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) ("To establish Article III standing,

plaintiffs must show (1) an injury in fact, (2) a causal relationship between the injury

and the challenged conduct, and (3) that a favorable decision will likely redress the

injury."); *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015)

-13-

(plaintiffs "must establish standing for each type of remedy sought, including declaratory and injunctive relief").

At the hearing, Igbanugo argued that he could use such a declaration to defend himself in the pending disciplinary proceedings. But the connection between any findings that this Court might make regarding *other* attorneys' alleged ethical violations and the redress Igbanugo seeks—i.e., successfully fending off (or mitigating) any discipline that may be imposed in *his* disciplinary proceeding—is far too attenuated and speculative to confer standing. *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 709 (8th Cir. 2021) ("it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citation and quotation marks omitted)).[6]

Finally, Igbanugo's requests for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 are patently frivolous. Rule 11 and § 1927 do not apply to proceedings conducted wholly in state court, nor is there a private cause of action to enforce either provision. *See* Fed. R. Civ. P. 1 ("[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts" with the exception of certain

---

[6]Even if this were sufficient to confer standing, this Court would not entertain these claims for declaratory relief, as Igbanugo can present his arguments directly to the state court. *Cf. Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 625 (8th Cir. 2008) ("Deciding whether to entertain a declaratory judgment action, a district court should determine if the question in controversy would be better settled in the proceedings in the state court.").

specialized federal proceedings); 28 U.S.C. § 1927 ("Any attorney or other person

admitted to conduct cases in any court of the United States or any Territory thereof who

so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."); *Cohen v. Lupo*, 927 F.2d 363, 365 (8th

Cir. 1991) ("Rule 11 sanctions must be sought by motion in a pending case; there can be

no independent cause of action instituted for Rule 11 sanctions."); *In re Case*, 937 F.2d

1014, 1023 (5th Cir. 1991) ("§ 1927 cannot reach conduct occurring in a separate state

court proceeding no matter how vexatious or multiplicious that conduct may be");

*Aldrich v. Ruano*, 952 F. Supp. 2d 295, 301 (D. Mass. 2013) ("Aldrich's claim under 28

U.S.C. § 1927 is not cognizable because this provision does not contain an explicit

private cause of action, nor is there any basis to find that Congress intended to imply

one."), *aff'd*, 554 F. App'x 28 (1st Cir. 2014) (per curiam).

    For these reasons, the Court grants the Wilson and Aust defendants' motions to

dismiss.

III.  MOTIONS FOR SANCTIONS

The Wilson and Aust defendants move for sanctions under Fed. R. Civ. P. 11.[7]

Under Rule 11(b), an attorney's presentation of a "pleading, written motion, or other

paper" certifies that the material "is not being presented for any improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"

and that "the claims, defenses, and other legal contentions are warranted by existing

law or by a nonfrivolous argument for extending, modifying, or reversing existing law

or for establishing new law."

"Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and

legal basis for a claim before filing."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).  In

determining whether a violation has occurred, a court "must determine whether a

reasonable and competent attorney would believe in the merit of an argument."  *Id.*

(citation and quotation marks omitted).  Upon finding a violation, a court may, if

"warranted for effective deterrence," order the offender to pay the movant "part or all

of the reasonable attorney's fees and other expenses directly resulting from the

violation."  Fed. R. Civ. P. 11(c)(4).

---

[7]Before filing their motions, the Wilson and Aust defendants gave Igbanugo the
"safe harbor" notice required by Fed. R. Civ. P. 11(c)(2).  *See* Sampsel Decl. ¶ 5 & Ex. A;
Putney Decl. ¶ 5 & Ex. D.

As discussed above, Igbanugo's claims against the Wilson and Aust defendants are utterly frivolous. No reasonable and competent attorney could believe that he could bring a private lawsuit in federal court for the purpose of imposing professional discipline and sanctions under Rule 11 and § 1927 for the conduct of his opposing counsel in a completely separate state-court case. Nor could any reasonable and competent attorney believe that he could bring a private lawsuit to institute attorney-disciplinary proceedings. And it has been clear for decades that there is no private right of action under the Minnesota Rules of Professional Conduct.

It is even more egregious that Igbanugo's claims against the Wilson and Aust defendants are largely premised on the contention that the *Onofre* case was frivolous. Before Igbanugo filed this lawsuit, not only had the *Onofre* jury found that Igbanugo had committed malpractice, breached contracts with his clients, and violated the Minnesota Consumer Fraud Act, but the Minnesota Court of Appeals had affirmed the jury's verdict. It is possible that the jury and the Minnesota Court of Appeals made factual or legal mistakes, but Igbanugo's argument that the *Onofre* case was *frivolous* is ridiculous.

Igbanugo's claims against Buteyn and Rodelius are particularly indefensible. Buteyn played no role in the *Onofre* case; it appears that Igbanugo sued her simply because she is Wilson's wife. Putney Decl. Ex. E at 3 (Igbanugo's response to the Wilson

defendants' safe-harbor notice arguing that "it is proper to sue Ms. Buteyn since she is a co-owner of Wilson Law Group by virtue of her marriage to Mr. Wilson"). Igbanugo contends that Buteyn was "complicit" in the *Onofre* case, Compl. ¶ 131, but he alleges no facts that would render that allegation remotely plausible, nor any facts that would render such complicity sanctionable. While Rodelius was at least involved in litigating *Onofre*, Igbanugo does not allege any sanctionable conduct on her part other than that she was involved in the case—which, again, can hardly be considered sanctionable given the jury's verdict and the decision of the Minnesota Court of Appeals.

It is also obvious that Igbanugo brought these claims against the Wilson and Aust defendants for an improper purpose—namely, to retaliate against them for successfully pursuing the *Onofre* lawsuit and to intimidate any other lawyer who might consider suing Igbanugo on behalf of one of his former clients. Igbanugo's invective-laced 109-page complaint (with over 2,500 pages of attached exhibits) seems intended to inflict costs on defendants rather than to set forth viable legal claims supported by coherent factual allegations. The complaint is also, despite Igbanugo's protestations to the contrary, a transparent and plainly improper attempt to relitigate the *Onofre* case. *See, e.g.*, Compl. ¶¶ 26–29, 35–37, 78–195, 197–202, 204–14, 216. In response to the Aust defendants' initial, informal request that Igbanugo consider dismissing this lawsuit, Igbanugo indicated that he would make it his mission in life to pursue Aust, Wilson,

and the Wilson Law Group for their roles in the *Onofre* case.  Sampsel Decl. ¶ 3.  And in response to the Wilson and Aust defendants' formal safe-harbor notices, Igbanugo used insulting language, threatened to seek sanctions, and took the opportunity to claim yet again that the *Onofre* case was frivolous.  Sampsel Decl. ¶ 6 & Ex. B; Putney Decl. ¶ 6 & Ex. E.

As Igbanugo's claims against the Wilson and Aust defendants are completely frivolous—and as it is clear that Igbanugo filed those claims for an improper purpose—the Court concludes that sanctions are warranted.  Under Rule 11(c)(4), sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Here, Igbanugo is clearly seeking to inflict financial costs on the Wilson and Aust defendants in retaliation for their winning a malpractice case against him and complying with their ethical obligation to report Igbanugo's malpractice to OLPR.  *See* Minn. R. Prof. Conduct 8.3(a).  Such misconduct is extraordinarily detrimental to the practice of law.  And Igbanugo's own words suggest that he intends to continue to abuse the legal process to harass these defendants.

For these reasons, the Court concludes that a sanction in the form of an award of attorney's fees and costs to the Wilson and Aust defendants is necessary to deter Igbanugo from continuing to abuse the legal process in this manner.  Such an award

will also ensure that Igbanugo—and not the Wilson and Aust defendants (or their insurers)—bears the cost of his unethical conduct.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendants' motions to dismiss [ECF Nos. 19, 29, 34] are GRANTED.

2.    Plaintiffs' complaint [ECF No. 6] is DISMISSED as follows:

    a.    To the extent that Count 10 seeks the imposition of sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, that count is DISMISSED WITH PREJUDICE AND ON THE MERITS.  The remainder of Count 10 is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

    b.    Counts 1 through 9 are DISMISSED WITHOUT PREJUDICE under *Younger v. Harris*, 401 U.S. 37 (1971) and *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), except that any claim seeking an order requiring the state defendants to initiate disciplinary proceedings against the Wilson and Aust defendants is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

-20-

3.      The Wilson and Aust defendants' motions for sanctions [ECF Nos. 23, 30] are GRANTED.

4.      No later than November 24, 2021, the Wilson and Aust defendants must submit affidavits and supporting documentation setting forth the attorney's fees and costs that they have incurred in defending this action. The Wilson defendants may file a memorandum of no more than 2,000 words in support of their claimed fees and costs. The Aust defendants may do likewise. No later than December 8, 2021, plaintiff may file a response of no more than 2,000 words to each memoranda.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 9, 2021                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge