UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| Herbert A. Igbanugo, Plaintiff, | ) | File No. 21-cv-105 (PJS/HB) |
| v. | ) | Minneapolis, Minnesota July 23, 2021 8:30 a.m. |
| Minnesota Office of Lawyers' Professional Responsibility, et al., Defendants. | ) | |

---

BEFORE THE HONORABLE PATRICK J. SCHILTZ
UNITED STATES DISTRICT COURT JUDGE
**(MOTION HEARING)**

**APPEARANCES**

**For the Plaintiff:**
**IGBANUGO PARTNERS INT'L LAW FIRM, PLLC**
**HERBERT IGBANUGO, ESQ.**
250 Marquette Ave, #1075
Minneapolis, Minnesota 55401

**For the Defendants:**
**BASSFORD REMELE**
**KELLY PUTNEY, ESQ.**
100 S. 5th St., #1500
Minneapolis, Minnesota 55402

**CHRISTENSEN LAW OFFICE, PLLC**
**AARON SAMPSEL, ESQ.**
800 Washington Ave. N., #704
Minneapolis, Minnesota 55401

**MINNESOTA OFFICE OF ATTORNEY GENERAL**
**JANINE WETZEL KIMBLE**
445 Minnesota St., #1100
St. Paul, Minnesota 55101

Court Reporter:
DEBRA BEAUVAIS, RPR-CRR
300 S. 4th St., #1005
Minneapolis, Minnesota 55415

Proceedings recorded by mechanical stenography; transcript produced by computer.

**P R O C E E D I N G S**

**IN OPEN COURT**

THE LAW CLERK: All rise. United States District Court for the District of Minnesota is now in session, the Honorable Patrick J. Schiltz presiding.

THE COURT: Good morning. Please be seated.

We are here today on the case of *Herbert Igbanugo v. Minnesota Office of Lawyers' Professional Responsibility*. The case is Civil No. 21-0105. If I could have everyone make their appearances, please. It's Igbanugo, right?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: Igbanugo.

MR. IGBANUGO: Herbert Igbanugo, Your Honor. Ready to proceed.

THE COURT: All right. Good morning.

And on the defense side here.

MR. KIMBLE: Good morning, Your Honor. Janine Kimble from the Minnesota Attorney General's Office on behalf of the state defendants. I'm happy to identify those specifically if you prefer?

THE COURT: Yes, if you would, please.

MS. KIMBLE: Thank you. The Minnesota Office of the Lawyers' Professional Responsibility, Susan Humiston, Amy Halloran, Jennifer Bovitz, Lawyers' Professional Responsibility Board, Jeannette Boerner, and Tommy Krause.

THE COURT: All right. Thank you. And good morning.

MS. KIMBLE: Good morning.

MS. PUTNEY: Good morning, Your Honor. My name is Kelly Putney. I'm from Bassford Remele. I'm here today on behalf of the Wilson defendants individually identified as the Wilson Law Group, David Wilson, Michael Gavigan, Eva Rodelius, and Cassondre Buteyn.

THE COURT: And good morning to you.

MS. PUTNEY: Good morning.

MR. SAMPSEL: Good morning, Your Honor. Aaron Sampsel from Christensen Law Office here on behalf of defendants Brian Aust and his law firm, Aust Schmiechen, P.A.

THE COURT: And good morning.

So I think this will work better or best, Mr. Igbanugo, if I could talk to you, please. So if I could have you at the podium, please.

MR. IGBANUGO: Thank you, Your Honor.

THE COURT: And welcome back. It's been a long time since I've seen you.

MR. IGBANUGO: Yes, Your Honor. Same.

THE COURT: You had the first immigration case I ever did as a judge. I don't know, you probably don't even remember. It was --

MR. IGBANUGO: Yes, I remember that.

THE COURT: Yeah, and it had to do with how you count days. It was a very complicated issue of how you count days. But, anyway, welcome back.

MR. IGBANUGO: Thank you.

THE COURT: I want to start by just clarifying exactly what relief you're seeking in your lawsuit as there seems to be some confusion in the briefs about that. I think I understand what you're seeking from the briefs, but I just want to make sure the record is clear.

It's true, is it not, that you are not trying to recover any money from any of the defendants except for sanctions? But you're not seeking any kind of damages from any of the defendants; is that correct?

MR. IGBANUGO: That is very clear and correct, Your Honor.

THE COURT: So you are only seeking prospective declaratory and injunctive relief against the defendants, correct?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: All right. And the only money you're seeking from them would be sanctions under Rule 11 or Section 1927. But, other than that, you're not seeking money from them; is that correct?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: Okay. And so to the extent your complaint talks about defamation or talks about abuse of process, in those sections you're describing to me conduct that you think should be disciplined, but you are not making a defamation claim or an abuse-of-process claim; is that correct?

MR. IGBANUGO: That is correct. And abuse of process on the goods and the prospective relief that are supposed to be -- under the petition for the global injunctive relief. So I'm not suing for defamation. I know I can't. I understand all that. So no.

THE COURT: Okay. Same with abuse of process, right?

MR. IGBANUGO: Of course. Yes.

THE COURT: All right. The other thing I wanted to clarify is that you are not challenging any decision that has been made in the past by any federal or state court or by the OLPR or the LPRB? You're not asking me to overturn anything that's happened in the past; is that correct?

MR. IGBANUGO: Not at all. Yes, Your Honor, you're correct.

THE COURT: Okay. So, for example, you're not asking me to declare anything with respect to your suspension in 2015? You're not seeking to relitigate that, correct?

MR. IGBANUGO: Not at all, Your Honor. Not at all.

THE COURT: Okay. So against the state defendants then, if I understand your papers correctly, you are seeking two things: One is you want me to stop them from disciplining you, the current proceeding against you; and you want me to order them to discipline or at least start proceedings against the defendant attorneys; have I got that right?

MR. IGBANUGO: Not quite.

THE COURT: Okay.

MR. IGBANUGO: Because it's a very complicated and confusing thing, Your Honor, as you stated.

With respect to the present proceedings, all I've ever asked is it to be fair. For it to be fair I was asking the state defendants to, please, defer or delay the proceedings until we come out of this court because the proceedings in this court -- what comes out of this court will inform what type of evidence could be used in the state proceedings.

I can go through state proceedings like every other lawyer. I'm already going through it. I filed an answer. I've been complying with everything they've asked me to do. But I felt like they were racing together. And I don't feel like I have a snowflake's chance in a blast

furnace of being treated fairly given my experience.

So, in essence, what I'm asking is that if they are going to keep racing to complete before the Court has had opportunity to see what happened here and what type of evidence is being used against me, then under those circumstances I would ask that the Court issue an injunction that they should not use any evidence from the *Onofre* case to try to take my livelihood away because I've never had a fair shake or a fair hearing on that. I was railroaded. There was fraudulent evidence. All these things that's bad in that case I have described in my complaint and in my reply briefs and everything. I don't think that it's fair to use that evidence in the state proceedings because of the way using that violates my civil rights.

THE COURT: Okay. So other than -- we'll talk about the merits of your claims. At this point, I'm just trying to figure out what you're asking me to do.

So with respect to the state, you want me to order them not to use any of the information that was presented in the *Onofre* case against you?

MR. IGBANUGO: At this time until this Court has had an opportunity to make findings and rule on it. As it is in the state proceedings they're using it wholesale. Most of their issues they are just using it -- you got found to be a fraud and a thief and everything, so we're going to

take your license away. So I don't think it's fair because I've been there.

So I'm asking you, Your Honor, to basically examine what happened in that case not for purposes of overruling it, but to see if there's been violations of civil rights in the things that have gone up to this stage -- from the time they started the investigation in the case until now, just protection of my civil rights in the process. That's all I'm looking for.

THE COURT: Okay. We'll return to that.

You also want me to order that they initiate disciplinary proceedings against the defendant attorneys; is that right?

MR. IGBANUGO: Yes, to the extent that their refusal to do so violates my civil rights.

THE COURT: Okay. Is there anything else you're seeking from the state defendants, I mean, you're asking me to order them to do?

MR. IGBANUGO: To leave me alone to practice law and serve my clients, that's all.

THE COURT: But I can't immunize you for the rest of your career. But you mean with respect to the current pending charges?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: Okay. Against the non-state

defendants I gather from your papers -- and, again, you correct me if I'm wrong -- that you're looking for at least a couple of things. One is you want me to enter a declaratory judgment that they violated the rules of professional conduct; is that correct?

MR. IGBANUGO: That's correct, Your Honor.

THE COURT: All right. And I couldn't tell, are you asking me to order that they be disciplined by the state authorities or are you asking me to impose federal discipline on them? As you know, there's the state bar and then there's our bar. They're separate bars.

MR. IGBANUGO: Yes.

THE COURT: I have control over our bar.

MR. IGBANUGO: Yes.

THE COURT: I don't have control over the state bar.

MR. IGBANUGO: Yes.

THE COURT: What exactly are you asking me to do with respect to the attorneys that you've sued?

MR. IGBANUGO: To the extent that any of them practices in this court, and I believe -- I know that the state defendants don't practice in this court -- I think the Wilson defendants and the Aust probably are admitted to practice; I believe they are. If they are, I'm asking the Court -- because the Court has adopted the state rules for

the court -- to impose discipline here in this court, not with the state.

THE COURT: Okay. So you recognize I can't order the Minnesota Supreme Court to discipline them?

MR. IGBANUGO: Of course. I understand that.

THE COURT: And I can't discipline them in terms of their relationship to the state. I can't say you are suspended from practicing law in the State of Minnesota. All I can do is say you can't practice law in my court.

MR. IGBANUGO: Of course, Your Honor. But I also understand that any findings you make that it will inform the state with respect and --

THE COURT: There's reciprocal -- usually we respect each other's decisions.

MR. IGBANUGO: Yes. Exactly.

THE COURT: And then you also would like them to pay sanctions to you under Rule 11 and Rule [sic] 1927; is that correct -- or Section 1927?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: And that is in connection with the *Onofre* lawsuit?

MR. IGBANUGO: Yes, Your Honor.

THE COURT: Okay. So let me talk, then, about the merits of the relief you're seeking. So I want to explore with you a little more what it is you want me to do about

the proceedings against you right now. And I think we have to start with this, which is the *Onofre* case and its finding that you committed malpractice and that you defrauded your clients. I can't overturn those.

MR. IGBANUGO: Oh, I understand that.

THE COURT: Those are binding on me.

MR. IGBANUGO: Oh, yes.

THE COURT: Okay? I think you are probably correct that the issue is not a *Rooker-Feldman* issue.

MR. IGBANUGO: Not at all.

THE COURT: I think it's a preclusion issue. It's through the doctrine of issue preclusion or collateral estoppel.

Obviously, I don't have any independent view on this as I wasn't part of the *Onofre* case, but that case was fully litigated in state court. You were represented. You made your arguments to the jury. You made your arguments to the judge. You lost on those points. It went on appeal. It was affirmed. So I have to assume for purposes of this lawsuit that you did commit fraud and that you did commit malpractice.

Given that, I don't know exactly what you want me to do. You say I should examine *Onofre*. I'm bound by the findings that you committed malpractice and fraud. So I'm just -- this is not a rhetorical question; it's a sincere

question. I can't quite figure out what it is you want me to do.

MR. IGBANUGO: And, Your Honor, under the All Writs Act this Court can vindicate me and do justice. Now, a jury can find anything. A jury found O.J. Simpson not guilty of killing his wife. Another jury found him liable. On a given day any jury can find with the same set of facts very different things.

The facts I outlined are true. These people did a dog whistle on the jury. We know what country we're living in. We know what happened with George Floyd, and we know what happened everywhere.

Your Honor, I don't have a victim mentality. I'm from Africa who were colonized by the British. My father was a surgeon. I grew up in a middle-class family. I work very hard. I'm a man of faith, a Christian, and a family man.

So when I have people I know are immoral go and lie to a jury, they're saying I'm incompetent, I'm this, I'm that, I'm a crook and a thief, it fits a black man. So if you had a jury of -- all white jury looking at me, they are not going to say yeah, that's fine. Because a jury says it does it mean it's true? No. I've never defrauded anybody in my life, Your Honor. People owe me a million and a half out there. I have done more pro bono work than most lawyers

would ever do in their life. Okay? I have never stopped working on a client's case because they owed money. So for them to put this dirt on me because of something that's personal or it's not animus, it's not fair. If this Court doesn't find a way to undo it, I'll live with it and we'll all meet in heaven.

THE COURT: Yeah, but that's -- yeah, and I'm not God, and I'm not here to say what's right and wrong. We're lawyers, and we have a certain set of rules and we follow the rules. One of those rules is you don't get to keep trying the same lawsuit over and over again.

MR. IGBANUGO: I'm not trying to --

THE COURT: The second O.J. Simpson lawsuit was a civil lawsuit. The first was criminal; different standards of proof. They didn't retry the criminal case.

So I can't retry -- I know that you're outraged by what happened to you in the *Onofre* case and you think it was a grave injustice, but there is no habeas action to attack civil proceedings. I'm bound by that.

MR. IGBANUGO: I'm not attacking that proceeding.

THE COURT: In my court you stand here guilty of malpractice and fraud. I can't do anything about that.

MR. IGBANUGO: Your Honor, I'm not attacking that. I said it in my first complaint I'm not attacking the *Onofre* case. It stands by itself. It's done. I get that.

All I'm saying is because they might have immunity -- they might have judicial immunity -- judicial action immunity, they don't have ethics immunity. They did some things wrong.

THE COURT: Yeah, that's them. And I agree with you, and I think your opponents are incorrect about what they said in their briefs. I can discipline somebody in federal court for what they do in state court. We do it all the time through reciprocal discipline. I would say 90 percent of the people that we discipline it's because of conduct in connection with state proceedings, not in connection with federal proceedings.

And I also agree with you it's possible to win a lawsuit and still violate the rules of professional conduct. So it's entirely possible that Mr. Wilson, even though he won the *Onofre* case -- I realize he wasn't the lead attorney, but even though his firm won the case, it's possible he committed ethics violations, and it's possible that I could discipline him in my bar for those ethics violations. But I'm talking about the proceeding against you right now. I don't know what I can do about that since I'm bound by the findings.

How can I tell the state that it can't initiate proceedings against a lawyer who a jury found committed malpractice and fraud?

MR. IGBANUGO: That's not what I'm asking. I know you can't do that. There are different standards of proof. In disciplinary proceedings it's clear and convincing evidence. In civil court in *Onofre* it was preponderance of the evidence.

THE COURT: Right.

MR. IGBANUGO: Okay. And there's no collateral estoppel. The state still has to -- in the proceedings still has to meet the higher burden.

But, Your Honor, any comments you make, any findings you make whether you order the state or not, I think and I know they have to respect it. They can't just glance over it. Any findings you make in this court with respect to what I'm asking -- what I'm asking is very narrow. I know what the law says you can or cannot do. So what I'm asking is very narrow. And I'm not looking for you to order the state to do anything. Once you make your own findings, and even if it's -- any findings you make, I know the state will respect it.

THE COURT: But what findings -- so you want me to basically retry the *Onofre* case --

MR. IGBANUGO: No.

THE COURT: -- and say what I would have done and then tell -- just advise the state that, geez, I think he got a raw deal here, I think he did not commit malpractice?

MR. IGBANUGO: Well, this is in the context of civil rights, Your Honor. I have alleged civil rights violations. And there's case law that the state cannot violate civil rights under the guise of discipline. That's the jurisdiction of this court, to make those findings regarding civil rights violations.

And in this case, the civil rights violations is really intertwined with, you know, kind of what happened not just in the *Onofre* case, from the *Onofre* case onwards, post *Onofre*.

So I'm not asking for *Onofre* to be disturbed. All I'm asking for is accountability on the part of the perpetrators to the extent that what they did was what the state is using, and the state immunized them from what they did, and that immunization violates my civil rights is what I'm saying.

THE COURT: Okay. Well, you know the *Younger-Middlesex* abstention doctrine.

MR. IGBANUGO: Correct.

THE COURT: You right now are before a referee in your proceedings, right?

MR. IGBANUGO: Yes.

THE COURT: And after that it would, of course, be the Minnesota Supreme Court that makes the decision.

MR. IGBANUGO: Yes.

THE COURT: The Supreme Court says I have to stay out of attorney disciplinary proceedings, including yours --

MR. IGBANUGO: Yes.

THE COURT: -- as long as you are able to make your federal claims, such as your civil rights claims, in the system. I don't see any reason you can't make your civil rights claim to the referee and then to the Minnesota Supreme Court. And in your briefs you've been very clear that you've never accused the Minnesota Supreme Court of being racist or unfair to you.

I don't know -- who is the referee? Is it a judge that got appointed, a retired judge?

MR. IGBANUGO: Yes. Judge Maturi.

THE COURT: You don't have any reason, I assume, to think he is unfair or racist?

MR. IGBANUGO: No.

THE COURT: All right. So you can make your civil rights claims to him initially, and then you can make them to the Minnesota Supreme Court. Doesn't that mean I have to abstain under the *Younger* doctrine?

MR. IGBANUGO: No. No. It's totally different. Your Honor, if I may refer to my notes?

THE COURT: Sure. Yeah. You can get whatever you'd like.

MR. IGBANUGO: I think what would -- the third

prong of *Younger* and the bad faith, harassment, and extraordinary circumstances on that abstention I think I meet quite easily.

THE COURT: How is that?

MR. IGBANUGO: Well, I have been treated in bad faith by the state. Now, and you talk about Jon Maturi and the Supreme Court, that's different.

The OLPR and the Lawyers' Professional Responsibility Board, they're adjudicative in their way because at the initial stages they can decide that there's no discipline and dismiss without proceedings or they can decide that there's something to investigate and investigate, and after that the director can also dismiss.

Now, it's when they find there's going to be public discipline, that's when they refer. They are able to filter the evidence on what goes into the process and exclude evidence.

So to say that because the judge is going to be fair or the Supreme Court is going to be fair is not enough. They may be fair, but it's what's fed to them by their babies, if I can --

THE COURT: You can feed whatever you -- what the Supreme Court asks me to look at is whether you can make your federal claims to them, to the referee and to the Minnesota Supreme Court. You can, right?

MR. IGBANUGO: I don't think I can fairly because most of the things I filed in this court they will not let it come in in the state proceedings. There's all kinds of rules of evidence that is going to make it not come in. So I will not be --

THE COURT: Well, what rule won't allow you -- for example, one of the claims you're making is a selective prosecution claim, that they are prosecuting you. It's not a criminal prosecution, obviously. They are proceeding against you, and you're black, and they're not proceeding against the defendants, and they are white, even though you've both committed misconduct. What rule will not permit you to make that argument to the Minnesota Supreme Court?

MR. IGBANUGO: Well, Your Honor, if Mr. Wilson and his cohorts are not investigated -- if they're not investigated and there's a finding that they have done all these things, the Supreme Court or Judge Maturi is not going to think much of it.

And what I'm asking is -- because the credibility of the whole *Onofre* case is on them. Now, if there's a finding -- if there's been an investigation against Mr. Wilson for all the things he has committed, then he has very little credibility and that evidence will be tainted evidence, which is what it really is.

So when the state refuses blindly and immunizes

them, what kind of chance do I have? I have already been disadvantaged. And they can filter what goes to the court. That's how it works. They can filter what the referee sees, and that filters into what the court itself sees. And because of the way I've been treated over the years, I look bad. Walking in there alone I look bad. And I don't think I can ever correct it in this lifetime, and that's fine. I do the best. I leave the rest to God. I know who I am. The paper doesn't define me. I'm saying I'm trying to use the best evidence I can to vindicate myself.

THE COURT: So the basis of your argument that you can't fairly make your federal constitutional claims in the state proceedings is that basically the prosecutor -- that's what the OLPR is, it's essentially the prosecutor -- has been unfair to you because they've charged you, but they're not charging the people involved in bringing the *Onofre* case?

MR. IGBANUGO: Yes, that's part of it.

THE COURT: Okay. And other than that, what evidence do I have that the state is treating you unfairly or in a racist manner?

MR. IGBANUGO: Well, Your Honor, I think in my petition I laid out what I think where it started. We're all human beings. And I know in the deepness of my heart that's where it started. When I walked in there in 2007, I

had lost a son two weeks before that. And when I was out in the hospital, one of my office managers wrote a check out of the trust account or whatever. It got covered, but it was a mistake. And I was explaining that. They said, well, you've got to plead to misappropriation of funds. I went ballistic. And as I stand here today, I wish I could take it back, but I lost it.

And, like I said, I know there are some things black people know that white folk can never understand. I know that day I was an "angry black man." I was marked from that day. There's nothing I could do for what was done for me. And I've lived with that. I can live with the consequences. I have apologized for it. I can't take it back. Okay? So that's where my problem started.

So every little thing -- they have investigated every single thing. This person did that, anybody can say anything, and they are all over me. Your Honor, it's torture. If you haven't experienced this, you wouldn't know what it is. But it's okay. I can withstand that. I'm still standing. But it has to be fair. You can't overlook somebody that steals money from a firm, no problem; does all this unethical things, no problem; and we use him as a key witness. That's white and black. It's clear.

The oppression, the disdain for me, the unfair treatment, I don't think anything is clearer in what I've

described. It doesn't get clearer than this. How do you see somebody do such bad things and they get away with it and I look at somebody cross-eyed and I'm at the supreme court for disbarment and loss of your license. Never mind I've served 20 to 30,000 clients with some of the best results in the country.

Your Honor, there's something I filed yesterday. I once handwrote a TRO in district court downstairs in '99. A 747 carrier was brought back from the tarmac and my client was let out of that plea with a handwritten TRO. That's how far I go for my clients. I'm confident that what I do for my clients -- not to (unintelligible), but I'm confident. All of a sudden, I'm a greedy person. And people owe me all this money. That's why I'm still broke. But I'm just searching for fairness and the truth. The OLPR, they're not searching for the truth. They're just trying to nail me.

THE COURT: Okay. So let me get back to -- because I'm still not clear on it -- so if I'm writing the order you want me to write to the state, what am I telling them to do?

MR. IGBANUGO: To be mindful of my civil rights and to play fair. That's really it.

THE COURT: Okay. I've never heard of such an order before.

MR. IGBANUGO: I'm not saying you should say that

exactly.

THE COURT: Well, I need to know exactly because I'm the judge and I have to write that order. Right? So what am I writing down to the state? You are hereby ordered to colon and then what?

MR. IGBANUGO: I'm not directing a speech. I'm not asking you to direct an order telling them to do anything. I'm just saying that the state should cease and desist from violating my civil rights.

THE COURT: So you want me to order them to cease and desist from violating your civil rights?

MR. IGBANUGO: Or doing things that may violate my civil rights in the proceedings. I've already alleged with my civil rights allegations. If that's not meritorious, then it's not meritorious. I think it is.

So I'm looking for this Court to make findings as to my civil rights allegations. That's really it. I don't think the state [sic] should order the state court to do anything. I don't think you can.

THE COURT: Okay. Let me ask you, then, about the other side of the relief you're seeking from the state, which is you want these defendant attorneys to be disciplined. What exactly do you -- who do you want me to order to do what with respect to your opponents?

Are you asking me to order the OLPR to ask the

LPRB to find probable cause? Are you asking me to order the LPRB to find probable cause? Are you asking me to order the Minnesota Supreme Court to discipline them? Who do you want me to order to do what with respect to Mr. Wilson and the other defendants?

MR. IGBANUGO: I'm not really sure the Court needs to order them to do anything. All I'm saying, the Court needs to make a ruling, a finding on my civil rights violation and on whether ethics rules have been violated. I think that's really --

THE COURT: Well, you don't have civil rights claims against them. They're not the government, so the Constitution doesn't apply to them.

MR. IGBANUGO: Okay, that they violated ethics rules in this court, that's all, in your court.

THE COURT: So the only thing you're asking is that I impose discipline on them in this court --

MR. IGBANUGO: Yes.

THE COURT: -- for their violations?

MR. IGBANUGO: Yes.

THE COURT: And your hope is that if I do that, that then will help you in your proceeding because the state authorities will see that I thought that they committed rules violations?

MR. IGBANUGO: Correct. Yes. Correct. Exactly.

THE COURT: That was going to be my next question, is how do you have standing? Standing is a jurisdictional doctrine and, therefore, I'm required to raise it myself, even though none of the defendants, to my surprise, raised it.

You know, for example, I have referred attorneys to the state bar in the past when I've seen unethical conduct in my courtroom, but I've never thought I have a right to bring a lawsuit to force them to discipline the attorneys. All I can do is make the complaint and it's up to the authorities to decide whether to pursue it.

How do you have standing to bring a lawsuit to force me to discipline other attorneys? At the end of the day, how does that change your life whether they are or are not disciplined? I know it gives you psychological satisfaction. But, other than that, how does it change your life?

MR. IGBANUGO: It really doesn't change my life. It brings out the truth for the whole world to see.

Again, unless I'm not understanding the Civil Rights Act, all I'm asking for is protection of my civil rights in this court. Whatever this Court does I think will trickle down to what the state court sees because there's comity. There is respect. There's mutual respect. I don't think the state court system is going to disregard or ignore

any rulings or findings or comments you make; if they do, then so be it, I've done my best.

THE COURT: So the way you have standing is if I discipline them, the state authorities are likely to respect my findings, and that in turn is likely to -- is it not possible both that they committed ethical violations in bringing the lawsuit against you, the *Onofre* case, and yet you also committed misconduct? Could you not both have violated the rules of professional conduct?

MR. IGBANUGO: I did not, not in the *Onofre* case, no. Because what happened in that case is these are clients I've had for a long time. They were convinced to do what they did. Even in their positions they said I promised them green cards in six months. What, am I nuts? You know. I've got to boo-boo the fool to do that. But that's what they sold the jury.

But, like I said, *Onofre* is really history to me. It doesn't take anything away from me. But I'm still suffering the consequences in state proceedings unfairly. And the chief perpetrator is walking around with so many, so many dishonest, unethical criminal activities in his time. It's just unfair to have him get away with blue murder and I'm being oppressed.

And I just -- maybe my thinking is warped, but, like I said, I'm a man that believes that all is fair and

dandy and that everybody treated each other fairly. I have never been the type of person to think, oh, I'm a poor, suffering minority. No, I've never thought that. But I'm looking at what's happening here.

This is too blatant for me to even not say anything because it doesn't take a genius to see the violations I've alleged. And they all -- I have proof for every single one of them. But yet they turn a blind eye completely to it. What am I supposed to do? I have to try.

THE COURT: Okay. Let me ask you about your claims against the defendant attorneys themselves. These are state law claims, right?

MR. IGBANUGO: Yes. Yes, Your Honor.

THE COURT: I mean, they're not the government, so you don't have civil rights claims. 1983 doesn't apply to them.

MR. IGBANUGO: Yeah. Yeah. Yeah.

THE COURT: And I'm wondering where I get jurisdiction. If I were to dismiss the federal claims against the state, would I have jurisdiction anymore over your claims against the non-state defendants, the private attorneys?

MR. IGBANUGO: No, I don't think so.

THE COURT: Okay. I don't think so.

MR. IGBANUGO: I don't think so. And that's why,

Your Honor, a declaratory judgment motion in federal court is the only way I saw to bring them to justice. And it so happened that it appeared that the state was somewhat complicit in what they were doing because they were encouraging it and they were happy with it. And I'm not saying --

THE COURT: What do you mean the state was -- what evidence do you have the state had any involvement in the *Onofre* case?

MR. IGBANUGO: Because they let it happen because repeatedly I was calling them out every step of the way.

And it's one person named Amy Halloran -- she's not there anymore. I've not -- I've never dealt with her, never met her, don't know her, don't know anybody else. These are people. Even though she represents the OLPR office, it's one person. So I'm not going to paint everybody with the same brush. I know she's the one that conducted her investigation, made up facts, tried to frame me with lies, and now she's disappeared. So I don't know if they got rid of her.

THE COURT: Did you have any contact with her before the lawsuit was brought or during the lawsuit while it was still going on in state court?

MR. IGBANUGO: Oh, yes.

THE COURT: So you were talking to the state bar

authorities about the *Onofre* case when it was being prosecuted?

MR. IGBANUGO: No. Oh, no, no, no. I didn't understand that question. No. No, I wasn't. No, I wasn't.

THE COURT: Do you have any evidence that the state had anything to do with the *Onofre* case until after the jury returned its verdict?

MR. IGBANUGO: No. No. It's not until the jury returned it's verdict. No. I don't think I said that it did.

THE COURT: Well, you talked about how the -- I can't remember the word you used, but it sounded like you were saying that the state was kind of in cahoots with the defendants in bringing the *Onofre* case against you and prosecuting you.

MR. IGBANUGO: Let me clarify that. There are other things. Your Honor, it's not just the *Onofre*. There are other little cases that pop up and they investigate it and they kill it, it comes up and they kill it.

First there was the *Andrade* case that he -- an *Andrade* disciplinary action that Mr. Wilson reported me to the board. They investigated for a year and a half. It went all the way to the supreme court. The referee threw it out completely and said there was no evidence, I didn't do anything. That's fine.

Then there was other things that were brought up, but the state always picks up on it. And so I've dealt with Amy Halloran with respect to several little things that she comes at me with.

So when the *Onofre* case came -- I do -- after the *Onofre* case, I reported -- I made five different reports regarding what happened in *Onofre* case that were all dismissed without investigations, and I didn't think that was fair.

THE COURT: Okay. Let me just check my notes here for a second.

Okay. So, again, just so I can -- this is my last question about -- so with respect to the non-state defendants what you're asking me to do is to discipline them for their conduct in the *Onofre* case from the federal bar?

MR. IGBANUGO: Yes.

THE COURT: And that is the relief you're seeking from them?

MR. IGBANUGO: Yes.

THE COURT: Okay. I don't have any more questions for you, Mr. Igbanugo. I'm sorry, as I've been reading the briefs I have been seeing Igbanugo, and I had the accent in the wrong syllable.

Is there anything more you wanted to say this morning?

MR. IGBANUGO: No, Your Honor. Thank you. I have had good audience with the Court.

THE COURT: Okay. Thank you. You can return to your seat.

MR. IGBANUGO: Thank you.

THE COURT: Let's see. Ms. Kimble.

MS. KIMBLE: Yes, Your Honor.

THE COURT: So you've heard my discussion with Mr. Igbanugo. Let me just invite you initially to respond to anything that you heard him say in response to my questions.

MS. KIMBLE: I think the only thing I just want to clarify is although it has been a little difficult to ascertain exactly the relief he's seeking against the state, it does appear he's clear that he wants this Court to issue some sort of order precluding the OLPR from introducing certain evidence. I'm not sure that he's established in his briefing or that I've been able to find any basis for a federal court to issue any sort of order to that effect. I think it runs clearly afoul of the *Younger-Middlesex* abstention doctrines. Those doctrines would have very little force if rather than abstaining a federal court could direct certain things to occur or not occur in the ongoing state -- ethical state attorney proceedings.

And then I just want to highlight that the --

obviously, the plaintiff is going to have an opportunity to present evidence to the referee. The state court rules provide that he can identify whatever defenses he can. There's the case that I cited by the Minnesota Supreme Court in an attorney ethics case where the Minnesota Supreme Court evaluated a constitutional defensive challenge to --

THE COURT: Yeah. Mr. Igbanugo has nowhere in his briefs claimed that he doesn't have the procedural right to raise federal claims. His only claim is that he doesn't believe that they'll be fairly considered because of his history with the board, in particular the board's -- what he views as the disparate treatment between him and the Wilson defendant. So I don't think there's any argument that he can make federal constitutional claims, including a selective prosecution claim, if he wants.

MS. KIMBLE: Thank you, Your Honor.

And then just -- I think those were the main things that I wanted to respond to from the argument that he had and the exchange that he had with you.

Most of what I wanted to cover was covered. I was going to focus on the *Younger* abstention. I'll just say briefly just the very brief sort of posture of this case is that in December of 2020, the OLPR initiated a charge of discrimination -- I'm sorry, initiated a charge of unprofessional conduct against the plaintiff.

After the receipt of the probable cause finding from the panel, the OLPR filed a petition for disciplinary action before the Minnesota Supreme Court in March of 2021. And, as this Court observed, a retired judge will be presiding as the referee in that case. And in the meantime, the plaintiff filed this action.

All of the arguments, as we've just discussed, that plaintiff wants to raise here he can raise in defense of his petition, in defense of the charges in the state, the ongoing state proceeding. And *Younger* and *Middlesex* require dismissal.

I'm happy to answer any questions the Court has on the application of *Younger* or *Middlesex*. That's where I was going to focus my argument.

THE COURT: I mean, I think they clearly apply to the ongoing state proceedings, so I don't think we need to discuss that.

MS. KIMBLE: Okay. Then that was what I was going to focus my argument on, Your Honor. It's dispositive of the claims against the state in my view.

I just wanted to emphasize the state defendants' view that the Minnesota attorney ethical proceedings rely on members of the public. The Rule 8.3(a) requires that lawyers report certain rule violations that raise substantial questions as to the lawyer's honesty,

trustworthiness or fitness as a lawyer.

The process also requires the participation -- the voluntary participation of members of the public who witnessed the unethical or the alleged unethical conduct.

State defendants are deeply concerned that this case is an attempt by plaintiff to harass and intimidate people who are central and necessary to the proceeding of these ethical proceedings. It is especially concerning that the plaintiff has caused a federal lawsuit to weigh on these individuals when, as state defendants have argued and as plaintiff has not disputed, he has an opportunity to raise all of these defenses in the context of the ongoing ethical proceeding.

And for those reasons, the state defendants respectfully request that this Court grant their motion to dismiss on the basis of *Younger* and *Middlesex*. I'm happy to answer any additional questions.

THE COURT: Okay. I do not have any additional questions. Thank you.

MS. KIMBLE: Thank you.

THE COURT: Let's see. Ms. Putney, did you want to speak this morning?

MS. PUTNEY: Good morning, Your Honor.

THE COURT: Good morning.

MS. PUTNEY: My comments will be brief.

Clearly you could tell from the briefing that we were not entirely clear what the claims were, the relief that was sought. That's been clarified by Your Honor this morning, so thank you for that. I do appreciate that. So I'm not going to address any of my arguments about claims for damages.

With respect to the request that this Court --

THE COURT: There's no money at stake here. Mr. Igbanugo was clear that the only money he's seeking is under Rule 11 and 1927, neither of which apply in state court. A federal judge can't sanction somebody under Rule 11 for what they do in state court or same with 1927. So there's no money at stake here.

MS. PUTNEY: So the only thing I'm going to focus on is what appears to be the request that this Court discipline my clients for their conduct in the *Onofre* case, the initiation prosecution of that action.

Those are complaints that have been made and decided by the OLPR already. Plaintiff has made --

THE COURT: That wouldn't preclude me from -- I think this is -- this is the one thing in all of your briefs that I think is just wrong and, in part, it's my fault because of *Cantu* opinion. Although, in my defense there was no objection to the R&R. It was a one-sentence adoption of an R&R. There's the state bar and there's the federal bar,

and the state runs the state bar and we run the federal bar. And there is nothing at all that keeps us from disciplining somebody, from kicking somebody out of our bar, suspending them for something they do in state court. There's also nothing that keeps us from disciplining an attorney in our bar even if the state has decided not to proceed them. It would be really unusual and it almost never happens, but nothing prevents that.

So to the extent that any of you is taking the position that I can't discipline somebody for what he or she does in state court, that's just not true. There's nothing in our local rules that restrict our jurisdiction to things that happened before us. And, as I mentioned to Mr. Igbanugo, most of what we discipline attorneys for has no connection at all to federal court. It's reciprocal discipline for what they do in state court.

So I could discipline your clients, but it's not a lawsuit. You don't bring a lawsuit to force me to discipline attorneys. You write a letter to the chief judge and you say I'm aware of unethical conduct and I ask that the federal court conduct an investigation, and then either he or sometimes he appoints a judge or sometimes he asks the bench as a whole to decide what to do about that.

So the fact that the state has decided not to proceed against your clients wouldn't foreclose me from

doing so. Obviously, we have a lot of respect for each other's decisions, though.

MS. PUTNEY: Okay. Your Honor, I guess we were relying on the *Cantu* decision.

THE COURT: Well, like I said, I'm somewhat embarrassed by that. But, you know, when I don't get an objection to an R&R, I don't go through it sentence by sentence. I just adopt it.

*Cantu* is wrong insofar as it suggests that we can only discipline attorneys for what happens in front of us. That is plainly not true because, as I said, you can get a list from our Clerk's Office of people we've disciplined. Most of them had nothing to do with what happened in federal court.

MS. PUTNEY: Right. And I understand the concept of reciprocal discipline. I thought often happening after the state has imposed its discipline, you would impose reciprocal discipline.

THE COURT: We always let the state deal with state violations. A William Butler was someone who was committing unethical conduct in this court and even then I referred him to the state. The state took action against him and then we did reciprocal, rather than do it ourselves. They have an ethics bureaucracy there. We don't have an ethics bureaucracy here. We depend on lawyers to kind of

volunteer to be like semi prosecutors. Our system just doesn't work as well as the state.

MS. PUTNEY: Sure. Sure. Your Honor, even though we did not brief it, I would argue that there is no standing for plaintiff to pursue this relief.

THE COURT: It's a big problem. You don't generally have standing to ask that somebody else be disciplined to give you the moral satisfaction of watching them be disciplined.

MS. PUTNEY: Right.

THE COURT: I also think if I dismiss -- you didn't address this either and I'm not being at all critical of you, but if I do dismiss the state claims on *Younger* abstention grounds, I don't think there's any jurisdiction over your claims, is there?

MS. PUTNEY: Correct, Your Honor. That was the only other comment I was going to make, that if you do in fact dismiss the claims against the state defendants, that we would ask that the claim or the request towards my client be dismissed on jurisdiction grounds as well.

THE COURT: Do I have the authority to impose Rule 11 sanctions against Mr. Igbanugo if I don't have jurisdiction over the claims against your clients?

MS. PUTNEY: I actually anticipated this question.

THE COURT: Okay.

MS. PUTNEY: And it's an interesting question. I think what I would argue is that -- and I've seen that issue come up when there's been, for example, a request for costs of the prevailing party where a determination has to be made as to who's the prevailing party and whether the court -- whether a party is the prevailing party when a case gets dismissed for lack of jurisdiction, and the courts say no, you're not the prevailing party. There's just no jurisdiction here.

In this case, I would argue that because plaintiff has availed himself of this court and we are obligated to respond to that, that it's a matter of fairness and public policy that this Court should be able to order sanctions because our hands are tied in this instance. And there doesn't need to be a finding of prevailing party in this case, but, you know, as a deterrent to continuing this action we would ask the Court to award fees.

I understand the jurisdiction issue is out there. I just think in this case, because the plaintiff has availed himself of this Court by bringing this action, that the Court is allowed to order sanctions as a deterrent.

THE COURT: Yeah. I haven't had a chance to research this and -- but I just don't know the answer. If somebody hypothetically brings a lawsuit, then signing the complaint violates Rule 11 because the lawsuit is not

adequately grounded in law and facts, and that lawsuit is dismissed because the court determines it has no power over it, it has no jurisdiction over it, whether the court can nonetheless impose sanctions under Rule 11. That has to have been litigated. I mean, it has to have come up. We haven't had time to look at it. I don't know what the answer is to it.

The fairness argument I understand, but fairness and jurisdiction don't have a lot to do with each other. Thank you.

MS. PUTNEY: I understand. Thank you, Your Honor.

THE COURT: Mr. Sampel [sic], is it?

MR. SAMPSEL: Sampsel, Your Honor.

THE COURT: I'm sorry, I didn't see the "s" until I put my reading glasses on.

MR. SAMPSEL: Good morning, Your Honor.

THE COURT: Good morning.

MR. SAMPSEL: I'll make my comments brief as we've talked about quite a bit this morning, and I think we've covered most of my concerns and my client's concerns.

The one thing I don't think we've touched on, though, is the pleading itself that names my client's law firm as a named defendant in this action. There are no allegations in the complaint itself that relate to a law firm at all. On that alone they can dismiss the law firm,

the entity itself.

The other thing I want to touch on is the Court's inherent authority to sanction attorneys in this bar for conduct occurring in state court. I agree with Your Honor that you can do that here, but I would just clarify that there are still procedural due process requirements that follow that process that haven't happened here.

THE COURT: Your client isn't going to open an envelope in the mail and find that he has been suspended from the federal bar yet. We do allow people to get notice and a hearing and things like that. We're sort of specialists in procedural fairness. It's what we do for a living.

MR. SAMPSEL: And on that same note with respect to Rule 11 sanctions, just for the record, plaintiff has not served any safe harbor notice under Rule 11 for sanctions for our clients.

THE COURT: There's nothing in your defenses that I think is frivolous or worthy of Rule 11 sanctions, so even if they had, I wouldn't be sanctioning you.

MR. SAMPSEL: With respect to plaintiff's complaints against my client, Brian Aust and his firm, he plays a relatively small but not necessarily insignificant role in this. I mean, this has taken a toll on him. Plaintiff has now called into question his credibility not

only as an attorney but also as a member of the bar and as an expert in immigration law.

The allegations all revolve around this *Onofre* case and his expert opinion given in that case. Unless the Court has any questions on the expert opinion testimony privilege that we've discussed in our briefing, I'd just rest on our request.

THE COURT: Mr. Igbanugo made it very clear he's not seeking to recover any money from your client, so there is no issue with respect to the privilege.

The only thing he wants with respect to your client he's made clear is for me to discipline him in federal court.

MR. SAMPSEL: Right. On that we'd request that the Court, again, grant our motion to dismiss and as well our motion for sanctions.

THE COURT: All right. Thank you.

Mr. Igbanugo, before we conclude, is there anything you wanted to say? Just take your time if you want to look at your notes.

MR. IGBANUGO: No, Your Honor.

THE COURT: All right. Thank you.

We will take the motions under advisement, then. I do believe that under *Younger* and *Middlesex County* I'm required to abstain from any interference in the state

proceedings. So there is no reason that the state should put anything on pause waiting for my order. I don't intend to do anything to interfere with the ongoing state proceedings. So you can let the state authorities know that. All right?

As to the other motions, I'll take them under advisement and I'll get an order out as soon as I can. Thank you all for your help with the case. Have a good weekend.

THE LAW CLERK: All rise.

(Court adjourned at 9:27 a.m.)

* * *

I, Debra Beauvais, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: *s/Debra Beauvais*
Debra Beauvais, RPR-CRR